432 So.2d 1162 (1983)
Louis J. ROUGEAU, Plaintiff-Appellee,
v.
COMMERCIAL UNION INSURANCE COMPANY, et al., Defendants-Appellants.
No. 83-48.
Court of Appeal of Louisiana, Third Circuit.
May 25, 1983.
*1163 Trimble, Randow, Percy, Wilson & Foote, Lon P. Wilson, Alexandria, for defendants-appellants.
David A. Sheffield and Gary Sheffield, Alexandria, for plaintiff-appellee.
Before DOUCET, YELVERTON and KNOLL, JJ.
KNOLL, Judge.
This is an appeal by the defendants, Commercial Union Insurance Company and its insured, Joey L. Fredieu, from a judgment notwithstanding the verdict in favor of plaintiff, Louis J. Rougeau.
The facts of this case are undisputed. On September 12, 1981 Louis J. Rougeau was riding a tractor which was being towed by a red and white Chevrolet pick-up truck driven by Marty Thiels, Jr. (not a party to this litigation). The truck and tractor were proceeding *1164 south on Highway 71 in Rapides Parish at a speed of approximately 20 miles per hour, or a little better. On that section of highway the posted speed limit was 55 miles per hour.
Joey L. Fredieu was also driving his Ford pick-up truck south on Highway 71 at approximately 55 miles per hour. He first observed the truck and tractor ahead of him at a distance of 800-1000 feet. He recognized it as moving traffic, but did not distinguish it as a tractor being pulled by a pick-up truck. There was no other traffic between them. The stretch of highway in question was straight and level with wide paved shoulders. It was midafternoon on a sunny day and there was nothing obstructing Fredieu's view ahead. According to his skid marks, prior to impact with the rear of the tractor ridden by Louis J. Rougeau, Fredieu did not apply his brakes until he was 40-50 feet away from the tractor.
Upon impact Rougeau was thrown backward from the tractor, smashing his head against Fredieu's front windshield before falling unconscious to the highway surface. Despite the fact that his injuries were not severe, a preexisting back condition, spondylolisthesis, slowed his recovery.
In his petition for damages Louis J. Rougeau alleged that the injuries he received on September 12, 1981 were caused by the fault or negligence of Joey L. Fredieu. The defendants maintain that the accident was caused either solely or in part by the negligence of Rougeau or Marty Thiels, Jr., or both, therefore, Rougeau and Thiels's negligence operated to completely bar or to reduce Rougeau's recovery of damages from the defendants.
Rougeau's suit was tried by a jury of twelve on September 16, 1982. After deliberation the jury returned the following verdict: Plaintiff Rougeau, Defendant Fredieu, and Marty Thiels, Jr. were all found at fault. They attributed 50% of the fault to Fredieu, 25% to Rougeau, and 25% to Thiels. Plaintiff's damages were fixed as follows: $1000 for hospital and medical expenses; $736 for lost wages, and $750 for physical pain and suffering.
The plaintiff timely filed a motion for judgment notwithstanding the verdict and, in the alternative, a motion for a new trial. In part, the motion reads:
"Mover shows further that the attribution of negligence to Joey Fredieu of 50% in the jury verdict was contrary to the law and evidence and that mover shows the testimony and evidence reveal that the proximate cause of the accident and the causation in fact for said accident was the sole negligence of Joey Fredieu in observing the truck being operated by Marty Thiels pulling a tractor approximately 800 to 1,000 feet ahead of Joey Fredieu and Joey Fredieu failing to see what he should have seen in continually observing said vehicle and in doing what he should have done in slowing his vehicle down or to pass said vehicle rather than driving directly into the rear of said vehicle because of Joey Fredieu's inattentiveness, failure to operate his vehicle at a reasonable rate of speed, failure to maintain his vehicle under proper control and running directly into the rear of the tractor upon which plaintiff was riding."
On November 10, 1982, the trial judge granted the motion notwithstanding the verdict and rendered judgment in favor of the plaintiff, Louis J. Rougeau, and against the defendants, Joey L. Fredieu and Commercial Union Insurance Co., finding that Joey L. Fredieu was the sole cause of the accident of September 12, 1981, and awarding Rougeau $750 for medical expenses; $2944 for lost wages; and, $7000 for general damages of pain and suffering. Pursuant to the code of civil procedure the trial court conditionally granted plaintiff's motion for a new trial. He likewise dismissed defendants' third party demand against plaintiff seeking contribution from him for property damage payments made by Commercial Union to the tractor owner. From these judgments the defendants have perfected the present appeal.
The issues presented on appeal are:
1) Whether the trial court erred in granting a judgment notwithstanding the verdict finding Joey L. Fredieu guilty *1165 of negligence which was the sole cause of the accident which forms the basis of this lawsuit when the jury had rendered a verdict apportioning the fault at 50% to Fredieu, 25% to Rougeau and 25% to Thiels;
2) Whether the trial court erred in increasing the award of lost wages from $736 to $2944; and,
3) Whether the trial court erred in granting a judgment notwithstanding the verdict increasing the award of general damages for pain and suffering from $750 to $7000.

STANDARD FOR JUDGMENT NOTWITHSTANDING THE VERDICT
The motion for judgment notwithstanding the verdict was enacted as Article 1810.1 of the Louisiana Code of Civil Procedure and became effective on September 10, 1982.
Article 1810.1 of the Code of Civil Procedure reads as follows:
"A. After a verdict has been returned by the jury, the court upon timely motion may set aside the verdict and enter a judgment notwithstanding the verdict in favor of any party.
A motion for a new trial may be joined with a motion for a judgment notwithstanding the verdict, or a new trial may be prayed for in the alternative.
B. A motion for a judgment notwithstanding the verdict shall be made not later than seven days after the clerk has mailed, or the sheriff has served, the notice of judgment. If a verdict was not returned, a party, not later than seven days after the jury was discharged, may move for a judgment notwithstanding the verdict.
C. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct that a judgment be rendered. If no verdict was returned, the court may direct that a judgment be rendered or may order a new trial.
D. If the motion for a judgment notwithstanding the verdict is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted, and shall specify the grounds for granting or denying the motion for a new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment.
In case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court orders otherwise.
If the motion for a new trial has been conditionally denied, and if the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court.
E. The party whose verdict has been set aside on a motion for a judgment notwithstanding the verdict may move for a new trial pursuant to Articles 1972, 1973, or both. The motion for a new trial shall be filed no later than seven days after the signing of the judgment notwithstanding the verdict. The motion shall be served pursuant to Article 1976.
F. If the motion for a judgment notwithstanding the verdict is denied, the party who prevailed on that motion may, as appellee, assert grounds entitling him to a new trial in the event the appellate court concludes that the trial court erred in denying the motion for a judgment notwithstanding the verdict. If the appellate court reversed the judgment, nothing in this Article precludes the court from determining that the appellee is entitled to a new trial, or from directing the trial court to determine whether a new trial shall be granted."
With the exception of requiring the filing of a motion for directed verdict as a condition precedent to the granting of a judgment notwithstanding the verdict, the Louisiana legislature in enacting LSA-C. C.P. Art. 1810.1 adopted, with only stylistic changes, Section 50(b), (c), and (d) of the Federal Rules of Civil Procedure. Since this motion is modeled after the federal *1166 rules, we may consult the federal decisions which have interpreted these provisions to obtain guidance in our present action. Madison v. Travelers Insurance Company, 308 So.2d 784 (La.1975).
We conclude that the standard for determining the propriety of granting a judgment notwithstanding the verdict is the same as used to determine whether a directed verdict should be granted. Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969); Lubbock Feed Lots, Inc. v. Iowa Beef Processors, 630 F.2d 250 (5th Cir.1980); Wright and Miller, Federal Practice and Procedure, Volume 9, sec. 2537, page 599.
In the present case the trial judge correctly adopted the standard to be applied in deciding whether a motion for judgment notwithstanding the verdict should be granted. The court's written reasons reflect its rationale:
"Louisiana courts adopted the standard for ruling on a motion for a directed verdict applied by the Federal courts. That standard was enunciated by the Third Circuit in Campbell v. Mouton, 373 So.2d 237 (La.1979), which quoted the following language of the U.S. Fifth Circuit Court of Appeal in Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969):
`On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.'"
In applying this standard the court can not weigh the evidence, pass on the credibility of the witnesses, or substitute its judgment of the facts for that of the jury. Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir.1979). However, we find, as did the trial court, that the following language is particularly applicable to the case at bar:
"Although credibility determinations and evaluation of evidence are reserved to the jury, where virtually no factual dispute exists, no credibility determinations by the factfinder (i.e., the jury) are required. In such a circumstance, questions of existence of a duty, violation of that duty by the defendant, and assumption of the risk or contributory negligence by the plaintiff are legal questions, and certainly within the province of the judge." Rawls v. Damare, 377 So.2d 1376, 1379 (La.App. 4th Cir.1979) writ denied 380 So.2d 72 (1980).

JUDGMENT NOTWITHSTANDING THE VERDICT
The defendants asserted that Thiels and Rougeau were contributorily negligent in two aspects: (1) by failing to display a triangular reflecting emblem as required by LSA-R.S. 32:377; and, (2) by traveling on the highway at an unreasonably slow speed.
Upon granting the plaintiff's motion for judgment notwithstanding the verdict the trial judge favored us with extensive written reasons for judgment. We adopt the trial court's analysis of its role in determining this motion.
In its evaluation of plaintiff's non-compliance with LSA-R.S. 32:377 the trial court reasoned:
"Conflicting testimony on a material issue can only be resolved by the jury. In passing on this motion, the court is required to accept the evidence in favor of the party against whom the motion is made. In the instant case, virtually all the facts are undisputed. The only testimony on a material issue which is possibly conflicting is as follows. Fredieu claimed that there were no brake lights `or anything else' which would *1167 indicate that the truck and tractor were moving slowly. Thiels claimed that the hazard lights on the truck were flashing. The court is obliged to accept Fredieu's testimony. In any case, even if the hazard lights on the truck were flashing the court would be obliged to accept the reasonable inference favoring Fredieu that the truck's blinking lights were obscured by the bulk of the tractor being pulled behind it.
The party against whom a motion for judgment notwithstanding the verdict is made must be given the benefit of every legitimate and reasonable inference that can be drawn from the evidence by the jury. However, the court is not bound by inferences which are unreasonable.
`It is the province of the jury to resolve conflicting inferences from circumstantial evidence, but permissible inferences must still be within the range of reasonable probability. It is the duty of the court to withdraw a case from the jury when a necessary inference is so tenuous that it rests merely upon speculation and conjecture.' Ford Motor Co. v. McDavid, 259 F.2d 261, 266 (4th Cir.1958) cert. denied, [358 U.S. 908] 79 S.Ct. 234 [3 L.Ed.2d 229].
There is no bright line which enables the court to distinguish between the reasonable, legitimate inference and the unreasonable, illegitimate inference. There is no precise rule to follow. The court can only test the reasonableness of the inferences drawn by jury from the evidence in terms of probability. An inference is legitimate only where the evidence offered makes the existence of the fact to be inferred more probable than not. Any lesser test would allow the jury to rest a verdict on speculation or conjecture.
The jury found that Joey Fredieu was negligent and that his negligence was a proximate cause of the accident on September 12, 1981. It was Fredieu's burden to prove any contributory negligence on the part of Marty Thiels, Jr. or Louis Rougeau which was a substantial factor in bringing about the collision.
In his amended motion, plaintiff contends that the testimony and evidence presented at trial prove that the sole proximate cause of the accident was the negligence of Joey Fredieu. So on the motion for judgment notwithstanding the verdict, the issue before the court is: `Could reasonable and fair-minded persons, viewing all the evidence in the light most favorable to defendant Fredieu, have reached different conclusions about whether Marty Thiels, Jr. and Louis Rougeau were contributorily negligent?'

* * * * * *
The court does not know the basis of the jury's finding of contributory negligence on the part of Thiels and Rougeau. Fredieu argued that the slow speed of the vehicles, as well as the failure to comply with R.S. 32:377, constituted contributory negligence. The court must assume that the jury based its verdict on both grounds.

* * * * * *
LSA R.S. 32:377 provides as follows:
`Every motor vehicle, combination of motor vehicle and towed equipment, every self-propelled unit of equipment, self-propelled implement of husbandry normally operating at speeds not in excess of twenty-five miles per hour on public streets and roads at all times shall be equipped with a slow moving vehicle emblem as follows:
(1) Where the towed unit or any load thereon obscures the slow moving vehicle emblem on the towing unit, the towed unit shall be equipped with a slow moving vehicle emblem.
(2) Where the slow moving vehicle emblem on the towing unit is not obscured by the towed unit or its load, then either or both may be equipped with the required emblem, but it shall be sufficient if either has it.
(3) The emblem required shall comply with current standards and specifications as established by the American Society of Automotive Engineers and approved by the commissioner.'
*1168 There was no dispute that the emblem was not displayed on either the truck or the tractor.
Assuming that Thiels and Rougeau were negligent in not displaying the emblem or that Thiels was negligent in driving at a speed unreasonably slow for the circumstances, such negligence could not constitute contributory negligence unless such negligence was also a legal cause of the accident. Breithaupt v. [Sellers] Houston General Insurance Co., 390 So.2d 870 (La. [1980] 1981); Weber v. Phoenix Assurance Co. of New York, 273 So.2d 30 (La.1973). The Court in Breithaupt said:
`The threshold inquiry in the determination of legal cause is whether the act was a substantial factor in causing the injury. As stated by this court in Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962):
`"Negligent conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm.. Under the circumstances of this case, the negligent conduct is undoubtedly a substantial factor in bringing about the collision if the collision would not have occurred without it. A cause-in-fact is a necessary antecedent. If the collision would not have occurred irrespective of the negligence of the driver of the R.C. Cola Truck, then his negligence was not a substantial factor or cause-in-fact...."' 242 La. at 482, 137 So.2d at 302. (Emphasis Added)
The court first addresses the question of whether the accident would have occurred if the slow-moving vehicle emblem had been displayed. Fredieu admitted that he was aware of the moving traffic ahead at a distance of approximately 800-1000 feet. Exhibits P-6 and P-7 depict the truck as it would have appeared to Fredieu at those distances. Fredieu said he did not distinguish the moving traffic ahead as a truck pulling a tractor. An excerpt of his testimony follows.
`Q. [Plaintiff's counsel] Well let me ask you this, when was it you actually saw the truck and tractor.

A. [Fredieu] Well, when I was coming down the road, I knew that there was traffic, uh, but by the time that I knew it was slow moving traffic and I had a chance to see what was going on I was up on him and that's when I threw my brakes on, brakes on.

Q. Alright, when was the first time you said you saw this tractor, you saw this tractor and this truck.

A. NO RESPONSE RECORDED

Q. Could you see the tractor, you said, very easily.

A. No sir, I didn't really realize it was a tractor until...

Q. What did you realize when you first saw it.

A. Well, I realized it was a tractor before that...

Q. I see.

A. ... And then again, I was up closer and when I got that close I realized it was a tractor and it was going real slow and I was coming up on it, so that's when I threw my brakes on.'
For the jury to have found Rougeau or Thiels contributorily negligent on the basis of failure to comply with R.S. 32:377, they would have had to infer that had the tractor displayed a slow-moving vehicle emblem, Fredieu would not have collided with the tractor. That would necessarily require the further inference that Fredieu would have seen and recognized the emblem at a distance of 800-1000 feet.
Fredieu identified D-4, shown to him at trial by his attorney, as `a slow-moving vehicle sign.' There was no attempt to prove that at the time of the accident Fredieu knew the significance of the emblem.
Fredieu asserted that at a distance of 800-1000 feet he was unable to distinguish the vehicles ahead as a tractor being pulled by a pick-up truck. He asserted, however, that he would have seen an eleven-inch wide triangular sign, positioned on the rear of the tractor. Such an inference cannot reasonably be drawn. It is extremely improbable that an eleven-inch wide sign could be *1169 seen at a distance of 800-1000 feet where a large yellow tractor with red and silver discs, being pulled by a bright red and white truck, with a flourescent (sic) orange insert across the entire rear glass could not even be distinguished or identified by Fredieu as he approached them. Reasonable and fair-minded persons could reach no other conclusion but that failure to display the sign was not a factor at all in bringing about the accident, much less a `substantial factor'."
Fredieu further contends that Thiels and Rougeau were contributorily negligent by operating the truck and tractor at a slow speed. At the point of impact, Thiels had driven the pick-up truck and tractor almost entirely to the left of the southbound lane of travel in anticipation of a lefthand turn off the highway.
On this issue there is also conflicting testimony. The state trooper who investigated the accident indicated that the point of impact was approximately one-half mile before the next intersection. Rougeau and Thiels urged that the intersection in question was only 500 feet away.
Campbell, supra, cautions that it is inappropriate for the court to substitute its judgments of the facts for the jury's determination. Assuming that the jury resolved this conflict in testimony in favor of the defendants the slow speed of the vehicles could only be classified as contributory negligence if it was also the legal cause of the vehicular collision. Breithaupt, supra.
Fredieu argued that if the truck and tractor had been traveling faster, he would not have collided with them. Fredieu admitted that even though he observed moving traffic ahead some 800-1000 feet prior to impact, he was not able to recognize that it was a truck towing a tractor until he was 40-50 feet away from it.
The appellants rely on Gray v. Popular Grove Planting & Refining Company, Inc., 321 So.2d 919, (La.App. 1st Cir.1975), writ refused, 325 So.2d 280 (La.1976), as controlling in the present case. We find Gray, supra, factually distinguishable, therefore not applicable. Gray, supra, involved a tractor pulling a sugarcane cart at ten miles per hour in a passing lane of a four-lane high speed highway (70 miles per hour) without the cane cart having a slow moving vehicle emblem; when the plaintiff passed a school bus, he was unexpectedly confronted with the tractor-sugarcane cart and skidded into the rear of the cane cart. In the present case, the appellant saw the traffic ahead at 800-1000 feet. He exercised poor judgment and/or inattentive driving by failing to react when he first saw the traffic. He was not caught by surprise as in Gray, supra; he made the perilous situation through his inattentive driving.

QUANTUM
In granting plaintiff's motion for judgment notwithstanding the verdict the trial court lowered the jury award for hospital and medical expenses from $1,000 to $750; raised the amount of lost wages from $736 to $2,944; and raised the award for pain and suffering from $750 to $7,000.
On appeal the litigants have not complained about the lowering of the jury award for medical expenses. The record clearly reflects that in its presentation of medical expenses, bills totaling only $750 were submitted. Since this issue has not been raised on appeal we will only consider the issues of lost wages and the general damage award.
The jury awarded Rougeau $736 for two weeks lost wages at the rate of $368 per week. In its increase the trial judge awarded lost wages for eight weeks, for a total of $2,944. In addition the trial judge increased the jury award for pain and suffering from $750 to $7,000. For the following reasons we determine that the trial court improperly used the judgment notwithstanding the verdict as the vehicle to achieve this result.
We hold the judgment notwithstanding the verdict was not intended to supplant the procedure for additur and remittitur of judgments in jury cases. The trial judge has the power to determine *1170 whether a jury award is so excessive or inadequate as to require remediation. Miller v. Chicago Insurance Company, 320 So.2d 134 (La.1975). Since C.C.P.Art. 1810.1 did not amend and/or repeal C.C.P. Art. 1813 the trial court must still utilize additur or remittitur as the vehicle to treat damages.
Article 1813 of the Code of Civil Procedure provides:
"If the trial court is of the opinion that the verdict is so excessive or inadequate that a new trial should be granted for that reason only, it may indicate to the party or his attorney within what time he may enter a remittitur or additur. This remittitur or additur is to be entered only with the consent of the plaintiff or the defendant as the case may be, as an alternative to a new trial, and is to be entered only if the amount of the excess or inadequacy of the verdict or judgment can be separately and fairly ascertained. If a remittitur or additur is entered, then the court shall reform the jury verdict or judgment in accordance therewith."
On the basis of article 1813 the trial court is not empowered to increase or decrease a jury verdict without the consent of the affected party. He may order a new trial if he finds the verdict is excessive or inadequate. By indicating to the affected party the amount by which he thinks the verdict is excessive or inadequate, with that party's consent a remittitur or additur may be entered as an alternative to a new trial. Without the consent of the affected party, however, to a remittitur or an additur, a new trial must be granted as to damages when the trial court makes a finding that the jury verdict is excessive or inadequate. We shall remand the quantum portion of this case with instructions to the trial court to comply with La.C.C.P. art. 1813.

DECREE
For the foregoing reasons, the judgment notwithstanding the verdict is affirmed as to liability. With regard to damages, the trial court's judgment notwithstanding the verdict is set aside, and this aspect of the case is remanded with instructions to the trial court to comply with La.C.C.P. art. 1813. Appellants are to pay all costs of this appeal.
AFFIRMED IN PART, REVERSED IN PART and REMANDED.