GARRISON, Judge.
On March 7, 1983, Albert Lizzana entered the Schwegmann’s Giant Supermarket on North Broad Street in New Orleans in order to purchase some frog legs. He inquired about the frog legs to Stella Moran, the seafood supervisor who was behind the counter at the time, and was told that the store did not have any frog legs. The events which transpired after this exchange are disputed by Mr. Lizzana and several employees of the defendant.
Mr. Lizzana claims that he quietly cursed to himself and then turned away to leave the store. He contends that he was then grabbed from behind by Schwegmann’s security officers and brought into the security office where he was handcuffed and was told that he was being detained until the police arrived. The police brought the plaintiff to Central Lockup where he was charged with criminal trespass.[1] Plaintiff contends that he was never asked to leave the defendant’s store.
A very different version of this incident was offered by several employees of the defendant. Stella Moran testified that after she informed the plaintiff that the store did not have any frog legs, he began using abusive and obscene language to her in a very loud voice. At that time, Moran called the store operator on the telephone in order to get the telephone numbers of other Schwegmann’s stores so that she could ascertain if any of these other stores had any frog legs. According to Moran, the plaintiff then walked behind the coun *11 ter, continued calling her obscene names and began pushing and hitting her. The telephone operator, Paula Davis, overheard this commotion and summoned the store security to the scene. Davis testified that she heard the plaintiff cursing at Moran and that the plaintiff also screamed several profanities to her while she was on the phone with Moran.
Joe Exnicios, the store manager, testified that when he arrived at the seafood counter, he found Ms. Moran crying and observed the plaintiff using vulgar language in a loud voice. Mr: Exnicios then asked the plaintiff to leave the store several times and the plaintiff refused.
Louis Lollis, assistant chief of security at Schwegmann’s, arrived at the scene where he overheard Exnicios ordering the plaintiff to leave the store. He also heard the plaintiff refuse to leave the store as he continued using obscene language. The plaintiff was then escorted to the security office where he was detained until the arrival of the police. While being detained, the plaintiff was handcuffed because he allegedly began to make threatening remarks to the security officers.
Lizzana filed this lawsuit against Schwegmann Giant Supermarkets for damages for malicious prosecution, libel, slander and defamation. At the conclusion of the trial, the jury returned a verdict in favor of the plaintiff for damages of $10,-000.00. The defendant filed a motion for judgment notwithstanding the verdict or, alternatively, for a new trial. The trial judge granted the motion for judgment notwithstanding the verdict and the plaintiff now appeals.
According to LSA-C.C.P. 1810.1,[2] a party may move for a judgment notwithstanding the verdict not later than seven days after the signing of the trial court judgment. It has been held that the standard for determining the propriety of a judgment notwithstanding the verdict is the same as that used in testing the correctness of a directed verdict. McClain v. Holmes, 460 So.2d 681 (La.App. 1st Cir.1984); Rougeau v. Commercial Union Insurance Company, 432 So.2d 1162 (La.App. 3rd Cir.1983), writ denied, 437 So.2d 1149 (La.1983). The Rougeau court followed the leading case of Boeing Company v. Shipman, 411 F.2d 365 (5th Cir.1969) which stated that:
“On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence — not just that evidence which supports the non-mover’s case — but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.”
It has been stipulated in several cases that in applying this standard, the court cannot weigh the evidence, pass on the credibility of the witnesses, or substitute its judgment of the facts for that of the jury. McClain v. Holmes, supra; Arnone v. Illinois Central Gulf Railroad, 461 So.2d 325 (La.App. 1st Cir.1984); Rougeau v. Commercial Union Insurance Company, supra; Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir.1979). However, on appeal, this court has the constitutional right to review the facts of a case in order to determine such questions as whether or not the plaintiff has carried his burden of proof. LSA-Const. art. 5, section 10(B); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
*12 We conclude that the plaintiff has not carried his burden of proof in this case. His uncorroborated testimony is wholly unsupported by the record and we cannot conclude that the trial judge abused his discretion in granting the defendant’s motion for judgment notwithstanding the verdict. Because “the facts and inferences point so strongly and overwhelmingly in favor of one party” that the trial judge found “that reasonable men could not arrive at a contrary verdict”, the granting of this motion in favor of the defendant was proper.
For the reasons stated above, the judgment of the trial court is affirmed.
AFFIRMED.

. Criminal trespass is the failure or refusal to vacate the premises of any privately owned and operated establishment when requested to do so by the proprietor, his agent or any person lawfully in charge. Municipal Criminal Code, Section 42-32, M.C.S.Ord. No. 6180.
According to plaintiff, there has not yet been any disposition of this matter in the Municipal Court.

. LSA-C.C.P. 1810.1, which was in effect at the time that plaintiff’s cause of action arose, was repealed in 1983 by Act No. 534. However, the provisions of this article are now contained in the reenacted Article 1811. The repeal of Article 1810.1 and the subsequent reenactment of Article 1811 do not affect this case.