PRESTON H. HUFFT, Judge Pro Tem.
Plaintiff, Josie Palermo, sued Stanley J. Lusignan Jr., the driver of the vehicle in which she was a guest passenger; his insurer, State Farm Mutual Automotive Insurance Company, under the liability and underinsured provisions of said policy; Eddie Salvant, the driver of the other vehicle involved in the accident; his insurer, Commercial Union Insurance Company; and State Farm Mutual Automotive Insurance Company under the underinsured provisions of her policy on her personal vehicle. The jury found Stanley J. Lusignan Jr. to be the sole cause of the accident and found Eddie Salvant to be free from negligence. The jury awarded plaintiff $5,000.00 in general damages and $1,000.00 in medical expenses. Judgment was entered in accordance with the verdict of the jury.
From the foregoing judgment, plaintiff filed a Motion For A New Trial or in the alternative, a Motion For Additur And Reformation of Verdict on the grounds that the jury verdict was contrary to the law and evidence because of the inadequacy of the damage award and the failure to find Eddie Salvant negligent. , After a hearing on the motion, the trial judge ruled that the law and evidence was in favor of the plaintiff with respect to the issue of lost wages *935 in the amount of $281.80 but that the law and evidence otherwise favored the defendants. The judgment was issued granting an additur in the amount of $281.80 but the right of rejection or acceptance of the addi-tur within the specified time was granted not to the aggrieved and affected party, the defendant, but to the plaintiff. The judgment also denied the Motion For A New Trial. Within the time allowed in the judgment, the plaintiff rejected the additur and complained that upon such rejection she was entitled to a new trial in accordance with La.C.C.P. art. 1814. When her request was denied, plaintiff filed this appeal.
The accident complained of happened in the following manner. Josie Palermo was a guest passenger in the front seat of a vehicle being operated by Stanley J. Lusig-nan Jr. on Opelousas Avenue in New Orleans, Louisiana. Lusignan brought his vehicle to a stop at the intersection of Opelou-sas and Whitney Avenues in compliance with the stop sign. He proceeded across the first two lanes of Whitney Avenue then through the neutral ground area of Whitney Avenue into the other two lanes of traffic on Whitney Avenue, where his vehicle was struck on the right side by the Eddie Salvant operated vehicle proceeding on Whitney Avenue.
Plaintiff contends that she was entitled to a new trial upon her rejection of the $281.00 additur. La.C.C.P. art. 1814 (formerly numbered as art. 1813) provides:
“If the trial court is of the opinion that the verdict is so excessive or inadequate that a new trial should be granted for that reason only, it may indicate to the party or his attorney within what time he may enter a remittitur or additur. This remittitur or additur is to be entered only with the consent of the plaintiff or the defendant as the case may be, as an alternative to a new trial, and is to be entered only if the issue of quantum is clearly and fairly separable from other issues in the case. If a remittitur or additur is entered, then the court shall reform the jury verdict or judgment in accordance therewith.”
In Miller v. Chicago Insurance Company, 320 So.2d 134, 136 (La.1975), the Louisiana Supreme Court, in interpreting the provisions of then La.C.C.P. art. 1813, set forth the following:
“However, it is only when the trial judge is of the opinion that a new trial should be ordered because the verdict is excessive or inadequate that remittitur or ad-ditur is available as a means of avoiding a new trial.”
* * * * * *
The Louisiana statutory scheme requires the consent of the party adversely affected by an additur or remittitur. The party is offered an opportunity, when asked by the trial judge, to agree to a change in the judgment, thereby avoiding the expense and delay of a new trial. The order of an additur or remittitur is therefor contingent; if the party does not agree to the change, he elects to submit to a new trial.”
Also in Rougeau v. Commercial Union Insurance Company, 432 So.2d 1162 (La. App. 3 Cir.1983) we find the following at page 1170:
“On the basis of article 1813 the tidal court is not empowered to increase or decrease a jury verdict without the consent of the affected party. He may order a new trial if he finds the verdict is excessive or inadequate. By indicating to the affected party the amount by which he thinks the verdict is excessive or inadequate, with that party’s consent a remmititur or additur may be entered as an alternative to a new trial. Without the consent of the affected party, however, to a remittitur or an additur, a new trial must be granted when the trial court makes a finding that the jury verdict is excessive or inadequate.”
From the foregoing it is readily apparent that the adversely affected party in the instance of an additur is the defendant, who must either agree to an increase in the award or face a new trial, and in the instance of a remittitur the adversely affect *936 ed party is the plaintiff, who must either agree to a decrease in the award or face a new trial. In the instant case the plaintiff should have played no role whatsoever in the acceptance or rejection of the additur. Hence, her displeasure with the amount of additur did not entitle her to a new trial. It is noted that the defendant did not officially accept or reject the additur in the trial court but in its brief indicates that it will accept the additur rather than face the alternative of having the matter remanded to the trial court for the granting of a new trial.
Plaintiff requested that the court give the following special charges: (13) “An automobile driver who looks and does not see another vehicle in the road ahead of him is charged with not having looked at all.” (14) “An automobile driver is guilty of negligence for driving at a rate of speed greater than that in which he can stop wihin the range of his vision.” (5) “A driver of a motor vehicle has the duty to discover another vehicle in the road ahead of him, which by the use of ordinary and reasonable care he should have seen in time to avoid running into it.” (16) “A driver of a motor vehicle must constantly keep an alert and vigilant lookout ahead, and when the circumstances are such that he could or, by the exercise of ordinary care, should have seen a vehicle ahead, he is charged with having seen what he could or should have observed.” The trial judge refused to give the above requested special charges on the basis that the legal principles raised by the requested charges were included in the court’s general charge. We have reviewed the court’s charge to the jury and find that the general charge adequately covered the question of the comparative negligence of both drivers and the failure to give the requested special charges did not prejudice the plaintiff. We have also reviewed the question of the negligence of Eddie Salvant and we find that the jury did not commit manifest error in absolving Eddie Salvant of negligence. In view of the foregoing and the acquiescence of all parties in the finding of negligence on the part of Lusignan, there remains no issue as to the liability aspects of the judgment.
Over the objection of plaintiff, Stanley Lusignan Jr. testified very briefly as to his financial situation and ability to pay a judgment rendered against him. Plaintiff contends that the trial court erred by permitting such testimony while denying plaintiff an opportunity to discuss the amount of the available insurance coverage in closing argument. When evidence of an individual’s inability to respond in damages is allowed, the opposing party is entitled to introduce evidence of the individual’s insurance coverage. The trial judge allowed the introduction of the insurance policies into evidence and made the policies available for inspection by the jury. Thus, plaintiff was not prejudiced by the refusal to permit reference to the coverage of the policies in closing argument.
The only question remaining is whether the trier of fact abused its great discretion in awarding general damages in the amount of $5,000.00 and medical expenses of $1,000.00. There is little dispute as to Ms. Palermo’s condition during the course of her treatment by Dr. Baher, her family practitioner. She was treated at the emergency room of West Jefferson General Hospital on November 21, 1981, the date of the accident, and on November 23, 1981, she saw Dr. Baher. At the time of her visit to Dr. Baher, plaintiff complained of pain in the forehead, the base of the nose, leg, posterior neck and lower back. Dr. Baher examined her and found that she had some abrasions and bruises on the forehead, the base of the nose and lower leg. She also had tenderness of the muscle of the posterior neck. Dr. Baher diagnosed a strain of the posterior neck and prescribed some muscle relaxants and pain pills. Plaintiff’s next visit to Dr. Baher was on November 30, 1981 during which she stated her neck was better. Dr. Baher found the bruises of the forehead and eyes were somewhat larger than they had been on the previous visit and the tenderness of the posterior neck had improved. Plaintiff was instructed to take her medication in- *937 eluding a new drug, Clymoral, to hasten the absorption of the bruises around the facial area. Plaintiffs next visit was on December 7, 1981 at which time the bruises had decreased in size and there was a small abrasion at the base of the nose, the tenderness of the posterior neck had decreased but there was no mention of the condition of the low back area. Dr. Baher continued her on the muscle relexants and pain pills. The plaintiff returned to see Dr. Baher on December 16, 1981 at which time she had no complaints, the bruises were completely resolved and she had a small scar on the base of her nose. Plaintiff was discharged as recovered by Dr. Baher at that visit. On January 11, 1982 plaintiff returned to see Dr. Baher relative to a vaginal infection. She was diagnosed as having vaginitis and lumbar strain. When asked if plaintiff’s complaints in November and December of 1981 and January 1982 were related to the accident of November 21, 1981, Dr. Baher stated “the patient did complain of low back pain in November of ’81 although she didn’t mention it all the way through the record of the visits and did complain in January of ’82. There is certainly no[1] possibility that this may be connected although I have no proof that it is.” On cross examination, Dr. Baher testified that the plaintiff had complained of low back pain on March 19, 1976 and the examination revealed spasms at that time.
Plaintiff was next examined by Dr. Nel-ville Reehlmann, an orthopedic surgeon, on January 22, 1982. Dr. Reehlmann treated the plaintiff for some 26 months after the accident. Plaintiff was diagnosed by Dr. Reehlmann as having a posterior bulging of the disc at L4-L5, and a tear to the annulus fibrosis at L4-L5, which were caused by the accident in question. Under treatment by Dr. Reehlmann, plaintiff was hospitalized on two occasions — one for diagnostic tests and secondly for enzyme injection. The record also discloses that plaintiff incurred significant expense as a result of the treatment by Dr. Reehlmann.
On extensive cross-examination, defendant was able to elicit from Dr. Reehlmann that there was no entry in the history of the plaintiff as to any prior difficulty with the back; that there were no lumbar muscle spasms at the first visit and he was more concerned at that visit with the cervical spine pathology than with the lumbar pathology; that he discharged plaintiff on two occasions before treating her lower back with chemical injections; that there were numerous occasions on which the plaintiff, according to the office notes, was “doing well” or “better” and made no complaint of back pain; that on two occasions objective EMG tests indicated no nerve root pressure; that tests such as a bone-scan, electro-myelograms or nerve conduction studies CAT scan were negative; that some orthopedists frowned on the concept of discography; and that at the time of her hospitalization at Jo Ellen Smith Memorial in April 1982 plaintiff’s condition was not serious enough to justify surgery or disc injection.
Plaintiff complains that the jury abused its “much discretion” in awarding only $5,000.00 for general damages and $1,000.00 for medicals. CIV.C.Art. 1934(8) provides that in the assessment of general damages, “much discretion must be left to the judge or jury.”
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to pri- or awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine the award is inadequate or excessive. Under this rule the amount of damages assessed by the jury should not be disturbed unless the appellate court’s examination of the facts reveals a clear abuse of the discretion vested in the jury. Reck v. Stevens, 373 So.2d 498 (La.1979). Plaintiff was involved in an *938 automobile collision. The vehicle, in which she was a passenger, flipped over and she was trapped in the car for 20 minutes. She consulted Dr. Baher, her family doctor, on three occasions for bruises, abrasions, a scar on her nose, pains in her leg, neck, and back. She was discharged by her family doctor on December 16, 1981 as cured. She returned to see Dr. Baher on January 11, 1982 for vaganitis and a complaint of pain in her low back. On January 22,1982, plaintiff consulted Dr. Reehlmann, an orthopedist. As pointed out previously, there is considerable evidence relative to the absence of causal relation between the treatment she received from Dr. Reehlmann for 26 months and the vehicular accident of November 21, 1981. When we look to the facts and circumstances peculiar to this case, we cannot say that the exercise of the discretion of the jury in determining what past, present and future injuries and damages were suffered by the plaintiff as a result of the accident of November 21, 1981, reveals a clear abuse of the “much discretion” vested in said jury.
The judgment of the lower court is amended so as to reflect the additur of $281.00 referred to previously. In all other respects the judgment of the lower court is affirmed.
Amended and affirmed.

. The "no” is obviously in error. It is apparent that Dr. Baher used either "a” or “some” instead of the reported “no”.