503 So.2d 1104 (1987)
John Dale BELLARD, Plaintiff-Appellee,
v.
CNA INSURANCE, CO., et al., Defendants-Appellants.
No. 86-254.
Court of Appeal of Louisiana, Third Circuit.
March 4, 1987.
Rehearing Denied March 31, 1987.
Writ Denied May 29, 1987.
Guglielmo, Lopez and Tuttle, James S. Gates, Opelousas, for defendants-appellants.
Felix A. Dejean, III, Opelousas, for plaintiff-appellee.
Brinkhaus, Dauzat and Falgoust, Jerry Falgoust, Opelousas, for defendants-appellees.
Before DOMENGEAUX, FORET, and KNOLL, JJ.
KNOLL, Judge.
Valley Forge Insurance Company (Valley Forge) appeals from a judgment notwithstanding the verdict which increased the jury verdict from $31,150 to $56,100. The trial court entered judgment against both Valley Forge and its insured, Charlotte Weinstein. Weinstein has not appealed, therefore, her liability under the judgment is final. See Golden Lane Marine v. Bobben Fabricators, 338 So.2d 116 (La.App. 4th Cir.1976), writ denied, 340 So.2d 317 (La.1976). Valley Forge's sole assignment of error is whether the trial court properly granted plaintiff's motion for judgment notwithstanding the verdict on the issue of damages. We reverse the judgment notwithstanding *1105 the verdict, and reinstate the jury verdict of $31,150.

FACTS
On December 7, 1981, while plaintiff, John Dale Bellard, was driving his Toyota automobile in a northern direction on La. 182 near the corporate limits of Opelousas, he stopped in his lane of travel when traffic in front of him came to a halt to allow a vehicle, inadvertently traveling north in the southbound lane, to enter the proper lane of travel. As plaintiff came to a stop, a Cadillac driven by defendant, Charlotte Weinstein, struck the rear of his automobile.
Prior to the accident, plaintiff underwent lumbar laminectomies at the L4, 5 level in 1972, 1974 and 1976. He testified that the impact stunned him and within hours pain gradually developed in his lower back. Plaintiff initially used a heating pad to relieve stiffness and swelling in his back. After a few days he consulted Dr. Henry LaRocca, an orthopedic surgeon, who attempted to fuse plaintiff's back at the L4, 5 level in 1976. Plaintiff was seen on December 15, 1981, and again on March 12, 1982, by Dr. LaRocca who prescribed analgesics, muscle relaxants and bed rest.
On April 19, 1982, plaintiff was involved in a second, and more serious automobile accident, in St. Landry Parish. In this accident plaintiff's automobile struck a pothole and flipped over while traveling approximately 50 m.p.h. As a result of this latter accident plaintiff was immediately hospitalized for unconsciousness and an inability to move his legs. In May 1982 Dr. LaRocca re-fused plaintiff's spine at the L4, 5 level and fused a new disc injury at the L3, 4 level.

JUDGMENT NOTWITHSTANDING THE VERDICT
Valley Forge contends that the trial judge: (1) abused his discretion and invaded the province of the jury when he increased the jury's damage award; (2) substituted his own factual conclusions for that of the jury; and (3) used the incorrect standard in granting plaintiff's motion.
In Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 (La.1986), the Supreme Court stated:
"When there is a jury, the jury is the trier of fact. LSA-C.C.P. art. 1736.
The rules governing a motion for judgment notwithstanding the verdict are found in LSA-C.C.P. art. 1811. The article does not specify the grounds on which the trial judge may set aside a jury verdict. The Official Revision Comments state that `... a judgment N.O.V. is based on a different standard [from additur and remittitur]namely, that based on the evidence there is no genuine issue of fact. Thus where the trial court is convinced that, under the evidence, reasonable minds could not differ as to the amount of damages [or as to liability], it should have the authority to grant the appropriate judgment notwithstanding the verdict.'

Because this article was based on a federal rule, the decisions of the federal courts can be used for guidance. Madison v. Travelers Insurance Company, 308 So.2d 784 (La.1975); State v. Bradford, 367 So.2d 745 (La.1978); Parish National Bank v. Lane, 397 So.2d 1282 (La.1981).

Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969), decided by an en banc court, set out the criteria to be followed on motions for directed verdict and motions for judgment notwithstanding the verdict in the federal courts. When `the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied ...' 411 F.2d at 374. Also see Backer v. Coursey, 472 F.2d at 887, 888 (5th Cir.1973); Melancon v. Western Auto Supply Co., 628 F.2d 395, 397 (5th *1106 Cir.1980); and Dalton v. Toyota Motor Sales, Inc., 703 F.2d 137, 140 (5th Cir. 1983)." (Footnotes omitted.)

Scott affirms the standards we set forth in Rougeau v. Commercial Union Ins. Co., 432 So.2d 1162 (La.App. 3rd Cir.1983), writ denied, 437 So.2d 1149 (La.1983), in ruling on motions for judgments notwithstanding the verdict. The Comments following LSA-C.C.P. Art. 1811 clearly show that paragraph F of Article 1811 was added to overrule only that portion of Rougeau that did not allow a trial judge to grant a judgment notwithstanding the verdict on the issue of quantum. Thus, under the present article, the standard to be applied in granting or denying damages are the same as set forth in Rougeau.
In the case sub judice the motion for judgment notwithstanding the verdict was granted solely on the issue of quantum. The trier of fact, here the jury, is given much discretion in making a damage award. LSA-C.C. Art. 1999; Scott, supra, and cases cited therein. Through trial stipulations, as recognized by the trial judge and admitted in brief by the litigants, it is evident that the jury reimbursed plaintiff's medical expenses of $6,150 and made a $25,000 general damage award.
After thoroughly reviewing the record and jurisprudence we conclude that the jury award of $31,150 did not constitute an abuse of discretion which warranted a judgment notwithstanding the verdict. Prior to the December 1981 accident, plaintiff was 40% permanently disabled. His total disability was not increased as a result of the December accident. He underwent lamenectomies in 1972 by Dr. Lazaro and 1974 by Dr. Goldberg, and a back fusion in 1976 by Dr. LaRocca. As of November 21, 1978, Dr. LaRocca opined that the L4, 5 fusion of 1976 was not solid, that continued pain was likely in the lumbosacral region, and that repeat surgery may be needed in the future depending on the degree of pain plaintiff suffered.
Concerning the effects of the December 7, 1981, and April 19, 1982, accidents Dr. LaRocca, plaintiff's medical expert and treating physician, concluded that based on his findings during surgery in May 1982 there was no disc rupture at the L4, 5 level as the result of the December accident and that the disc rupture at the L3, 4 level was caused by the April accident. Testifying further about the damage caused by the December 7, 1981, accident Dr. LaRocca stated:

"So I think what, what happened here, at least the thing that medically makes sense, is that he suffered an injury to the disc in December without actual rupture into the canal of any free fragments.

Q. But was anything torn, was that membrane torn in December?

A. Most likely, yes. An then that led to a problem which did not improve, and was then again injured to the point where I think the disc fragment was actually dislodged.

* * * * * *

I think that the condition known as annular tear is what was going on inside this L-4, 5 disc, beginning in December." (Emphasis added.)

The jury was squarely met with differentiating between plaintiff's injuries from the December 1981 accident and his injuries from the April 1982 accident. Additionally, plaintiff was totally disabled prior to the December accident. Dr. LaRocca was only able to tell the jury that it was likely that the December accident caused an annular tear at the L4, 5 level. Likewise the jury was presented with a question of how dibilitating plaintiff's back was during the interval between 1978 (when he learned that his fusion was not solid) and the December 1981 accident. The record shows that even though plaintiff testified that he was only occasionally bedridden for a day by the back pain, other witnesses stated that plaintiff was bedridden for consecutive days at various times during that period. Plaintiff further admitted to being a regular user of marijuana and hashish prior to December 1981, as well as taking prescription drugs, including percodan, valium, demoral, quaaludes and tranzene, to ease his pain and help him sleep.
*1107 Considering plaintiff's ineffective fusion at the L4, 5 level in 1978, his continued pain prior to the December accident, the markedly more severe 1982 accident, as well as the medical determinations involved, the record convinces us that the jury awarded $25,000 damages for pain and suffering for an injury to the lumbosacral area of plaintiff's back rather than for an annular tear. Such an amount is in line with the jurisprudential awards for other similar injuries. It is apparent that the jury weighed the evidence and drew inferences differently from the trial judge. The record shows that there was sufficient evidence for reasonable minds to reach different conclusions. Accordingly, the trial judge was clearly erroneous in granting a judgment notwithstanding the verdict, therefore, we reinstate the jury verdict of $31,150, but only as to the defendant, Valley Forge.
For the foregoing reasons, the judgment of the trial court granting a judgment notwithstanding the verdict is reversed, and the jury verdict is reinstated as to the defendant, Valley Forge.
REVERSED AND RENDERED; JURY VERDICT REINSTATED AS TO DEFENDANT, VALLEY FORGE INSURANCE COMPANY.