598 So.2d 1101 (1992)
Karen DENT, individually and as administratrix of her deceased minor child
v.
Dr. Joseph A. PERKINS, et al.
No. 91-CA-0689.
Court of Appeal of Louisiana, Fourth Circuit.
March 31, 1992.
Rehearings Denied June 17, 1992.
*1102 Joseph W. Thomas, New Orleans, for appellant.
Stassi, Rausch & Giordano, James E. Hritz, Rodney J. Lacoste, Jr., Metairie, for appellee.
Before SCHOTT, C.J., and BARRY, CIACCIO and LOBRANO, JJ., and BRYAN, J. Pro Tem.
TREVOR G. BRYAN, Judge Pro Tem.[*]
Following a jury trial of this medical malpractice case, the trial court entered a judgment notwithstanding the verdict dismissing plaintiff's suit. Plaintiff now appeals. For the reasons set forth below, we reverse the judgment of the trial court.
The record reveals the following factual situation:
In January 1981 plaintiff Karen Dent discovered she was pregnant and began prenatal treatment with Dr. Joseph Perkins. On June 26, 1981 she notified Dr. Perkins' office that she was experiencing labor pains and was instructed to go to the hospital. Plaintiff arrived at St. Claude General Hospital at approximately 11:00 a.m., and after examination by an obstetrical nurse, was found to be in labor.
The nurse, Jacqueline Patrick, notified Dr. Perkins of plaintiff's condition by telephone at approximately 11:45 a.m. Dr. Perkins was off-call beginning at 12:00 noon on June 26, 1981, and his partner, Dr. Odell Dean, was scheduled to attend to his patients. There was no available room for Ms. Dent in the obstetrical section of the hospital and the record indicates the patient was admitted to a non-obstetrical unit on the third floor of the hospital at approximately 2:30 p.m. At 3:40 p.m. Karen Dent delivered a baby girl with the aid of an obstetrical nurse. No physician was present at the time of the delivery. After delivery, the infant was transferred to the intensive care unit at Southern Baptist Hospital and was listed in critical condition. The baby was pronounced dead at 3:40 a.m. on June 28, 1981.
Karen Dent subsequently filed this wrongful death action individually and on behalf of her minor child. Named as defendants were Dr. Joseph Perkins, St. Claude General Hospital and Southern Baptist Hospital. Plaintiff later voluntarily dismissed her claim against Southern Baptist Hospital.
Prior to trial, the claim against St. Claude General Hospital was settled for the sum of $200,000. Ms. Dent also settled with Dr. Perkins and his insurer for $50,000, reserving her right to seek excess damages from the Louisiana Patient's Compensation Fund. Following this settlement, plaintiff filed a supplemental petition against the Patient's Compensation Fund.
Trial by jury was held on January 16 and 17, 1991. The jury returned a verdict in favor of Ms. Dent and against Dr. Perkins, apportioning fault of 35% to Dr. Perkins and 65% to St. Claude General Hospital. The jury awarded Ms. Dent damages of $300,000 on her own behalf and $100,000 for the damages suffered by her deceased minor child.
Following the jury's verdict, the trial court entered a judgment notwithstanding the verdict stating that "the court is of the opinion that the evidence and the law do not support the verdict of the jury." The court accordingly entered judgment in favor of defendants, dismissing plaintiff's claim.
Plaintiff now appeals arguing that the evidence presented at trial supports the jury's verdict finding of liability on the part *1103 of Dr. Perkins, and that the trial court erred in entering the judgment N.O.V. Plaintiff contends that in rendering its verdict, the jury made certain credibility determinations which were resolved in plaintiff's favor, and that the judgment therefore should not be disturbed.

FACTS
At trial, Dr. Perkins testified that he treated Ms. Dent prenatally beginning in January, 1981 and was notified by his office on June 26, 1981 that she was experiencing labor pains. He stated he went to St. Claude General Hospital at approximately 9:30 a.m. and waited until 11:00 a.m., but the patient did not show up. Dr. Perkins then returned to his office. At approximately 11:45 a.m., Dr. Perkins received a call from Nurse Jacqueline Patrick stating that Ms. Dent was at the hospital and appeared to be in the early stages of labor.
Dr. Perkins testified that Nurse Patrick informed him that there was no available bed in the Labor and Delivery Unit of the hospital, and he stated she requested permission to admit the patient to a non-obstetrical unit of the hospital for approximately ten to fifteen minutes until a bed could be cleaned. Dr. Perkins testified that he then gave permission to admit Ms. Dent to the third floor of the hospital for fifteen minutes. Dr. Perkins further testified that he informed Nurse Patrick during this conversation that he would be off-call at 12:00 noon, and to inform his partner, Dr. Odell Dean of Ms. Dent's condition and progress. Dr. Perkins stated that Nurse Patrick agreed. Dr. Perkins admitted at trial that he did not personally notify Dr. Dean of Ms. Dent's status because Dr. Dean was in surgery at that time and could not be contacted.
Further, Dr. Perkins testified that he, Dr. Dean and another physician formed a medical group referred to as Medical Associates, and the physicians in the group routinely covered for each other on rotating weekends. Dr. Perkins testified that approximately eighty percent of the group's practice occurred in St. Claude General Hospital, and that sixty percent of the hospital's deliveries utilize this medical group. He testified that a schedule of which physician was on call at a particular time was published each month and posted in the Labor and Delivery Unit. Dr. Perkins further testified that in 1981 it was common practice for the hospital to place patients in uncomplicated early stages of labor on the third floor until a bed became available in Labor and Delivery.
The only expert testimony introduced by plaintiff was that of Dr. Ernest Cherrie, who was qualified as an expert in the field of obstetrics. Dr. Cherrie testified that it would have been a breach of the standard care for Dr. Perkins to have failed to notify Dr. Dean of Ms. Dent's condition before he went off-call unless he had notified the nurse at the hospital to call Dr. Dean. He further testified that if a physician wanted to admit a patient temporarily to a non-obstetrical unit of the hospital, the physician should specify in his order the length of time the patient will remain in that unit. Failing to include this information would constitute a breach of the standard of care according to Dr. Cherrie.
Dr. Charles Frazier, a member of the medical review panel which initially reviewed plaintiff's claim against Dr. Perkins, was called by the defense. He testified that in his opinion Dr. Perkins had not deviated from the standard of care in treating Ms. Dent. He testified it was appropriate for Dr. Perkins to admit Ms. Dent temporarily to a non-obstetrical unit until a place became available for her in the Labor and Delivery Unit. Dr. Frazier also testified it was appropriate for Dr. Perkins to relay his order to Nurse Patrick to notify Dr. Dean of Ms. Dent's condition.
Nurse Jacqueline Patrick, who was assigned to the Labor and Delivery Unit of the hospital on June 26, 1981, testified at trial that she could not recall the events of that date other than by reading the information she contemporaneously recorded on the patient's medical chart. She stated that according to the chart she examined Ms. Dent in the Emergency Room and found her to be in active labor. She further *1104 stated that after examining the patient she "apparently called Dr. Perkins." The orders she recorded from Dr. Perkins were to admit the patient to the third floor. There was no notation in the chart that the patient was to be admitted to the third floor for a specified time. Nurse Patrick testified she could not recall the conversation with Dr. Perkins but stated that she would have charted any information given with regard to the length of time in the order.
Nurse Patrick had no personal recollection that Dr. Perkins had instructed her to notify Dr. Dean of Ms. Dent's condition, but testified that she would have done so if she had been so instructed. There was no notation in the patient's chart that Dr. Perkins had requested that Dr. Dean be notified. Dr. Dean was not notified of Ms. Dent's condition prior to the delivery.

ANALYSIS
There is a very narrow issue posed by the appeal of the trial court's order granting a judgment notwithstanding the verdict of the jury (JNOV), which verdict found in favor of the plaintiff and against defendant Dr. Perkins. The issue is whether or not the trial court properly applied the strict standard required for a JNOV.
The courts have carefully circumscribed the power of judges to overturn jury verdicts so as to give full measure to the right of a citizen to have his case tried by a jury.
In Rougeau v. Commercial Union Insurance Company, 432 So.2d 1162 (La. App. 3rd Cir.1983), writ denied 437 So.2d 1149 (La.1983) the court interpreted the standard applicable to the granting of a JNOV. In part quoting Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969), the Court said:
If the facts and inferences point so strongly ... in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, the granting of a [JNOV] is proper. On the other hand if there is substantial evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach difference conclusions, the [motion for JNOV] should be denied.... In applying this standard the court can not weigh the evidence, pass on the credibility of the witnesses, or substitute its judgment of the facts for that of the jury. 432 So.2d at 1166.
See also, Blum v. New Orleans Public Service Inc., 469 So.2d 1117 (La.App. 4th Cir.1985), writ denied 472 So.2d 921 (La. 1985).
A two step process may be employed in applying the standard of review. First, there must be an identification of a decision pathway emanating from the facts in evidence to the conclusion of the jury. Second, there must be an evaluation as to whether the decision pathway is logical and internally consistent and if so, whether or not it is reasonable in the light of human experience.
The two factual assertions that establish Dr. Perkins's liability for medical malpractice in this case are that: 1) He failed to inform the hospital staff that his admission of plaintiff to the non-obstetrical unit of the hospital was for a limited fifteen minute duration after which time she was to be placed in the obstetrical unit for observation, and 2) He failed to inform the hospital staff that another obstetrician, a Dr. Odell Dean, would be taking charge of the patient after 12:00 noon.
Plaintiff's expert opined that either assertion, if true, constituted medical malpractice. The posture in which this case has been brought to us does not permit us to consider the element of causation, as the parties themselves have defined the issues of contention as whether or not it was permissible for the jury to find that defendant committed the alleged lapses. So we must confine ourselves to considering the evidence that would support the jury's conclusion with respect to those two issues.
Evidence with respect to the two factual assertions consisted of the testimony of Dr. Perkins, Nurse Patrick, the author of the relevant portion of the hospital chart, and the hospital chart itself. Since Nurse Patrick professed no personal recollection of *1105 the event, the jury could not have based its conclusion upon her personal recollection. However, Nurse Patrick said that had Dr. Perkins limited the patient's admit to the non-obstetrical unit to 15 minutes, she would have recorded that limitation in the chart.
The jury could infer that an absence of such a notation means that Dr. Perkins never communicated the admit limitation to Nurse Patrick. It could also infer that Nurse Patrick failed to follow her usual practice in this instance. Either inference is logical and inherently consistent.
Choosing between these two inferences comes down to an evaluation of the credibility of the witnesses. The jury could have discounted Dr. Perkins's version of the events as self-serving. Without even ascribing any malevolent motive to Dr. Perkins, the jury could have simply trusted the cold declarations of the hospital charts more so than it trusted Dr. Perkins's memory of events occurring years before trial.
Nor can we say that the jury's conclusion is unreasonable. Nurses are taught to carefully record physician orders. In the litigious climate surrounding health care practice the faithful recordation of physicians' orders to the hospital staff is a standard of good nursing practice. To believe that the nurse in this case did not follow her usual practice is to believe that she was guilty of gross negligence. The evaluation of these contingencies is well within the province of the jury applying their knowledge of human nature to their observations of the witnesses. The point made here applies as well to the second issue in contention. The absence of a notation in the hospital chart that Dr. Perkins informed the hospital that Dr. Dean would be his replacement in the face of an obligation to record such information gives rise to an inference that Dr. Perkins never informed the hospital staff that Dr. Dean was taking over the case.
Accordingly, for the foregoing reasons, the judgment of the trial court granting the judgment notwithstanding the verdict is hereby reversed and the case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
CIACCIO, J., dissents with written reasons.
LOBRANO, J., dissents for the reasons assigned by CIACCIO, J.
CIACCIO, Judge, dissenting.
I respectfully dissent.
This Court's review of the trial court's decision granting a judgment N.O.V. is limited to a determination of whether the lower court's findings were manifestly erroneous. As the majority opinion notes, in ruling on this motion, the trial judge considers all of the evidence and reasonable inferences in a light most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary verdict, the motion should be granted. On the other hand, if there is substantial evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Blum v. New Orleans Public Service, Inc., 469 So.2d 1117 (La.App. 4th Cir.), writ denied, 472 So.2d 921 (La.1985).
Although credibility determinations and evaluations of the evidence are reserved to the jury and should not be disturbed by the trial judge, where virtually no factual dispute exists and no credibility determinations by the fact finder are required, the legal issues of the existence of a duty and a breach thereof are within the province of the trial judge. Rougeau v. Commercial Union Ins. Co., 432 So.2d 1162 (La.App. 3rd Cir.), writ denied, 437 So.2d 1149 (La. 1983).
The majority finds that the jury's verdict in plaintiff's favor was based on an evaluation of the credibility of witnesses. I disagree. My review of the record fails to indicate the presence of a factual dispute which would give rise to the necessity of a credibility determination by the jury.
*1106 Dr. Perkins positively testified at trial that he received a telephone call from Nurse Patrick on June 26, 1981 at approximately 11:45 a.m. regarding the labor progress of one of his patients, Karen Dent. He stated that on Nurse Patrick's request, he gave permission to admit Ms. Dent to the non-obstetrical floor of the hospital for fifteen minutes as there was no bed available in the labor and delivery unit. Dr. Perkins also testified that he informed Nurse Patrick during this telephone conversation that he would be off-call at 12:00 noon, and instructed her to inform his partner, Dr. Dean, of Ms. Dent's condition and progress. Dr. Perkins stated that Nurse Patrick agreed to do so.
The only evidence presented at trial in an attempt to refute Dr. Perkins' testimony was the testimony of Nurse Patrick. However, Nurse Patrick stated that she could not recall the events of the day other than by reading the patient's medical chart. Although the chart did not specify a length of time Ms. Dent was to be admitted to the third floor, Nurse Patrick stated she ordinarily would chart this type of information had it been relayed to her by a physician. Nurse Patrick could not remember the substance of her telephone conversation with Dr. Perkins.
With regard to the notification of Dr. Dean, Nurse Patrick's specific testimony was as follows:
Q. Do you recall whether or not Dr. Perkins told you that the call was changing at 12:00 o'clock? Do you know what I mean a call was changing; that someone else would handle his patients after 12:00 o'clock?
A. No, I don't remember that.
* * * * * *
Q. Do you recall talking to Dr. Dean?
A. No, I don't.
Q. If Dr. Perkins had asked you to talk to Dr. Dean, would you have called Dr. Dean?
A. I guess I would have. I can'tyou know, if he asked meif he tells me to call Dr. Dean, that would be my responsibility to call Dr. Dean. (Emphasis added)
Nurse Patrick was unable to state with any certainty whether or not she had been informed to notify Dr. Dean of Ms. Dent's condition, and in fact could not recall the day's events at all. Although she admitted that it would be her responsibility to call Dr. Dean if she had been instructed to do so, she could only guess whether she would have done so on that particular date.
Further, the record reflects that Nurse Patrick was the nurse who examined the plaintiff in the emergency room and she knew the patient was in labor. Although she informed Dr. Perkins of plaintiff's condition at 11:45 a.m., Nurse Patrick did nothing to check on plaintiff's status, and in fact plaintiff was not admitted to the hospital until 2:30 p.m., almost three hours after Nurse Patrick first examined her. In addition, although the record indicates the nurses on the third floor called for assistance from the time the patient was admitted at 2:30 p.m. until the baby was delivered at 3:40 p.m., there is no evidence that Nurse Patrick responded to these calls or made any attempts to follow through with the labor progress of this patient.
Under these circumstances, I am unable to find a contradiction between the positive and specific testimony of Dr. Perkins on the one hand and the vague and indefinite testimony of Nurse Patrick on the other. The evidence presented at trial with regard to the day's events do not give rise to a factual dispute which required an evaluation of credibility by the jury. Rather, the evidence presents the legal question of whether Dr. Perkins discharged his duty to his patient which determination is within the province of the trial judge.
In the present case, I find that the plaintiff failed to produce sufficient and competent evidence upon which reasonable and fair-minded persons could disagree and as such I find no manifest error in the trial judge's entry of a judgment N.O.V. in favor of Dr. Perkins. Accordingly, I would affirm the judgment of the trial court.
NOTES
[*] Due to the expiration of Judge Bryan's term of office prior to rendition, but after his concurrence therein, this opinion is rendered unanimously by Chief Judge Patrick M. Schott and Judge Denis A. Barry.