321 So.2d 919 (1975)
Mr. and Mrs. Leander H. GRAY
v.
POPLAR GROVE PLANTING & REFINING COMPANY, INC., et at.
Mr. and Mrs. Anderson PIERCE, Sr.
v.
AMERICAN MUTUAL LIABILITY INSURANCE COMPANY et al.
Nos. 10383, 10384.
Court of Appeal of Louisiana, First Circuit.
September 18, 1975.
Rehearing Denied November 24, 1975.
Writ Refused January 16, 1976.
*921 John A. Bivins, Lafayette, for defendant & third party plaintiffs Poplar Grove Planting & Ref. Co., Inc.
Robert Hunt, P. Chauvin Wilkinson, J. Carter Wilkinson & American Mut. Liab. in 10383 and for defendants & third party plaintiff (Shown above in 10384.)
Guy A. Modica, Baton Rouge, for Mr. & Mrs. Leander Gray in 10383.
Joseph A. Gladney, Baton Rouge, for third party defendant-plaintiffs Mr. and Mrs. Anderson Pierce, Sr., in 10383 and plaintiff-appellees in 10384.
Horace C. Lane, Baton Rouge, for 3rd party defendants. Mr. & Mrs. Anderson Pierce, Sr., and State Farm Mut. in 10383 and defendant-appellees Anderson Pierce, Sr. and State Farm Mut. in 10384.
Before LANDRY, BLANCHE and BAILES, JJ.
BLANCHE, Judge.
These suits arise out of an accident which occurred on Louisiana Highway No. 1 in West Baton Rouge Parish on what is referred to as the "Anchorage overpass" located between Port Allen, Louisiana, and the Mississippi River Bridge on U.S. Highway 190.
Robert Hunt, an employee of Poplar Grove Planting & Refining Company, Inc., while in the course and scope of his employment was driving a tractor and pulling a cart used for planting sugar cane south on Highway No. 1. At that point Highway No. 1 is a four-lane divided highway having a posted speed limit of seventy miles an hour, and Hunt was traveling in the inside or passing lane of said highway at a speed estimated at approximately ten miles per hour or less.
Anderson Pierce, Jr., the minor son of Anderson Pierce, Sr., was also proceeding south on said highway in a 1969 Chevrolet owned by his father. Riding with him as a passenger in said automobile was Sherwin O. Gray, the minor son of Leander H. Gray. Young Pierce was traveling in the outside southbound traffic lane and behind a school bus. As Pierce passed around the school bus, he was confronted with the slow-moving tractor. Although he applied his brakes, he was unable to stop and skidded approximately 131 feet into the rear of the cane cart. Both occupants were instantly killed.
Separate suits were filed by the parents of the deceased minors and the suits were consolidated for trial. The Pierces sued Robert Hunt, his employer, Poplar Grove Planting & Refining Company, Inc., and their insurer, American Mutual Liability Insurance Company. They also sued the executive officers of Poplar Grove. The Grays sued these same parties and additionally Anderson Pierce, Sr., and his insurer, State Farm Mutual Automobile Insurance Company. In both cases State Farm intervened for funeral expenses paid under the provisions of the automobile insurance policy. The defendants Hunt, et filed a third party demand against the Pierces and State Farm for contribution.
The trial court rendered judgment in favor of the Pierces and the Grays in the sum of $25,000 each for the death of their minor sons and against Hunt, Poplar Grove and American Mutual only. The court dismissed all of the other demands of the parties except the intervention of State Farm for funeral expenses.
After judgment the defendant Hunt, et al., settled with the Grays but reserved *922 their rights under the third party demand filed by them against the Pierces and State Farm.
This appeal is by Robert Hunt, Poplar Grove and American Mutual of the judgments in favor of the Pierces and the Grays. In the Gray suit it is directed solely to their claim of contribution from Pierce and State Farm.
The errors complained of are the finding of the trial court that Robert Hunt was negligent and in failing to find that Anderson Pierce, Jr., was negligent. We affirm.
The trial judge found that the tractor was in the inside lane of traffic at the time young Pierce attempted the passing maneuver around the bus; that the defendants failed to prove excessive speed on the part of Pierce; that the failure of the brakes on the rear wheels of the Chevrolet driven by Pierce had nothing to do with the accident, as all of the expert witnesses called to testify in the case agreed that because of the difference in the speed of the two vehicles and the distance between the vehicles when young Pierce perceived the danger of the tractor and applied his brakes, that an accident would have occurred even if the Pierce vehicle possessed 100 percent braking efficiency.
We find from our review of the record that the evidence supports these findings.
At the time of the accident, planting of cane was in progress, and Robert Hunt was picking up cane at a location on the east side of the highway immediately south of the overpass and transporting it to a field west of the highway and north of the overpass where it was being planted. The cane was loaded into a large two-wheeled trailer or cart which was pulled by an International tractor which Hunt was driving. He had finished with one load and was returning to get another load of cane prior to ceasing work for the day. Hunt left the canefield to the north, and west of the overpass, and was proceeding southerly toward Port Allen with the intention of making a left turn at the first intersection south of the Anchorage overpass. The time at which Hunt drove into the inside lane of Highway No. 1 was seriously contested, but the trial judge found (and we agree) that Hunt was in the inside lane a considerable length of time before Pierce began his passing maneuver.
The parties stipulated that Hunt was traveling at approximately ten miles per hour, and the school bus driver whom Anderson Pierce had been following stated he was traveling between 52 and 56 miles per hour at the time Pierce began his passing maneuver.
There was no slow-moving vehicle sign on the rear of the trailer which Hunt was pulling, though there was such a sign on the rear of the tractor. The evidence preponderates that this sign was not visible to young Pierce as he commenced his passing maneuver, because it would have been obscured by the trailer on the rear of the tractor.
The conduct of Robert Hunt was a cause in fact of the harm to plaintiffs. It consisted of his driving a slow-moving vehicle without the proper warning signs on the inside or passing lane of a multi-lane, high speed highway. In so doing, he breached a duty imposed by the following statutes:
REVISED STATUTE 32.64(B)General Speed Law
"Except when a special hazard exists that requires lower speed for compliance with paragraph A of this section, no person shall operate or drive a motor vehicle upon the highways of this state at such a slow speed as to impede the normal and reasonable movement of traffic. Acts 1962, No. 310, § 1."
REVISED STATUTE 32:71(B)Driving on Right Side of the Road; Exceptions
"Upon all multiple-lane highways any vehicle proceeding at less than the normal speed of traffic at the time and *923 place and under the circumstances then existing, shall be driven in the right hand lane then available for traffic, except when preparing for a left turn at an intersection or into a private road or driveway, or passing or overtaking a vehicle proceeding in the same direction, if passing on the left side of it. Acts 1962, No. 310 § 1."
REVISED STATUTE 32:377Slow Moving Vehicle Emblem
"Every motor vehicle, combination of motor vehicle and towed equipment, every self-propelled unit of equipment, self-propelled implement of husbandry or towed implement of husbandry normally operating at speeds not in excess of twenty-five miles per hour on public streets and roads at all times shall be equipped with a slow moving vehicle emblem as follows:
(1) Where the towed unit or any load thereon obscures the slow moving vehicle emblem on the towing unit, the towed unit shall be equipped with a slow moving vehicle emblem.
(2) Where the slow moving vehicle emblem on the towing unit is not obscured by the towed unit or its load, then either or both may be equipped with the required emblem but it shall be sufficient if either has it.
(3) The emblem required shall comply with current standards and specifications as established by the American Society of Automotive Engineers and approved by the director of the Department of Public Safety. Added by Acts 1972, No. 142, § 1."
The duty imposed by the foregoing statutes is to protect against the risk that a slow-moving vehicle would block traffic or create a dangerous condition on a high speed highway. R.S. 32.64(B) was designed to proscribe against slow speed which would impede the normal and reasonable movement of traffic. Driving a tractor pulling a cane cart at ten miles per hour on the inside or passing lane of a four-lane divided highway, in our opinion. is a violation of the statute. R.S. 32:71(B) requires slow-moving vehicles to drive in the right-hand lane except as allegedly appropriate here when preparing for a left turn. Hunt would have us believe he was preparing for his left turn approximately 780 feet on the other side of the overpass by moving into the inside or left lane even before he reached the overpass. We find this rather farfetched and believe that even if the statute does provide for slow-moving vehicles to drive in the left lane, a reading of the same together with R.S. 32.64(B) requires the conclusion that such vehicles are not permitted in the left lane if they impede the normal and reasonable movement of traffic. In other words, such slow-moving vehicles are not permitted in the left-hand lane when they would impede the normal and reasonable movement of traffic and thereby create an emergency as was created here by Hunt's driving a tractor ten miles per hour in the left-hand lane when the point at which he was to make his turn was not even in sight of either vehicle.
R.S. 32:377 requires slow-moving vehicles towing a trailer to display a slow-moving emblem on the towed unit. The obvious purpose of this requirement is to aid a following motorist to perceive the fact that the vehicle ahead is not moving normally but at a slow speed. As noted above, the slow-moving vehicle sign was not displayed on the towed cane cart but the sign on the rear of the tractor was, in fact, obscured from view by the cane cart which was being towed. Had such a warning sign been displayed as required by the statute, then possibly Anderson Pierce, Jr., would have had additional reaction time to perceive the danger created by the tractor proceeding at a dangerously slow rate of speed in the passing lane of the highway.
Appellants contend that Hunt was not in violation of R.S. 32.71(B) as the *924 statute plainly gives him the right to be in the left lane in preparation for a left turn. The left-hand turn lane was located approximately 420 feet south of the overpass, or approximately .5 of a mile from the point where Hunt decided to change lanes. Nevertheless, it is argued that the choice of Hunt in entering the left lane prior to ascending the overpass was a reasonable and proper choice because it gave following vehicles the opportunity to observe the lane in which he was traveling and, therefore, eliminate surprise as to following vehicles as they came over the crest of the overpass. This argument might have merit if the left turn lane was located at the foot of the overpass; but such was not the case.
We reject the argument, as did the trial judge, who observed:
"The question presented is whether his maneuver in changing lanes more than .5 miles from the point of the anticipated left turn was in preparation of the turn. This Court thinks not. Counsel strongly urges that his choice in this regard need not be the best one but only a reasonable one. We agree with the above statement as to the standard of care but disagree that the choice he made was reasonable. To be on the down side of the crest of the overpass when vehicles traveling in that lane of traffic might reasonably be anticipated too `close' at a speed of 60 miles per hour (70 miles per hour less 10 miles per hour) is much more dangerous than to remain in the right lane until the point of the left turn is reached, particularly since that point is .2 of a mile from the south `toe' of the overpass.
At a speed of 10 miles per hour the tractor would travel approximately 14.5 feet per second. At this rate the tractor would have been in the left lane for a period of approximately 3 minutes before reaching the left turn point."
Counsellor argues that the distance from the south toe of the overpass was less than.2 of a mile, but we do not view this as crucial to the foregoing observation.
Defendants argue that even if Robert Hunt was negligent, so was Anderson Pierce, Jr. and that his negligence contributed to the accident. The negligence charged against young Pierce is excessive speed and overtaking and passing the school bus without first ascertaining that the passing lane was clear.
To show excessive speed, the defendants sought to elicit testimony from a witness who observed the Pierce vehicle driving recklssly and at a high rate of speed east of the Mississippi River bridge, approximately 3 or 4 miles from the accident. The trial judge sustained an objection to this testimony on the grounds that it was too remote from the scene of the accident. Defendants also produced the testimony of another witness who described a reckless passing maneuver of young Pierce not more than a mile from the accident.
Even though we regard the evidence of the witness who observed young Pierce driving east of the Mississippi River bridge relevant and admissible, the trial judge did not give it any weight, as he excluded the same. As a trier of fact, it certainly was within his prerogative to disregard the testimony, but it was technically error to exclude it as the same was relevant for the purpose of being weighed on the issue of Pierce's speed.
Further, on the question of the relevancy of Pierce's speed, the trial judge found and the evidence is in full support thereof, that even assuming a speed in excess of the legal limit, such speed was not the cause in fact of the accident, as the accident would have occurred even at much slower speeds, due to the failure of young Pierce to timely perceive the danger of the slow-moving vehicle.
However, our review of the evidence discloses that witnesses on the bus and other expert testimony could be relied upon by the trial court as proof that young Pierce was not exceeding the legal speed limit at the moment of the accident and, therefore, no manifest error was committed by the trial judge as to this finding of fact.
*925 The defendants also argue that Pierce was contributorily negligent because he attempted to pass a school bus without first ascertaining that the left or passing lane was clear. In other words, he is charged with a duty to observe the tractor which was clearly in the left lane in front of him. While it is true that Pierce could have seen the tractor, it is also understandable that he failed to realize that the tractor was driving so slow as to be virtually blocking his lane of travel as this is the very risk of harm that the foregoing statutes sought to protect against.
We find the failure of Anderson Pierce, Jr. to perceive the slow-moving vehicle in time to avoid the accident is excusable and that the sole and only cause of the accident was the presence of the slow-moving tractor and trailer in the passing lane of a high-speed, multi-lane highway without displaying the proper warning signs.
For the above reasons, the judgment of the trial court is affirmed at Appellants' costs.
Affirmed.