633 So.2d 329 (1993)
STATE of Louisiana
v.
James D. DICKENS.
No. 93/KA/0135.
Court of Appeal of Louisiana, First Circuit.
November 24, 1993.
*330 William R. Campbell, Jr., New Orleans, Pamela Hershey, Asst. Dist. Atty., Covington, for State of La.
Douglas C. Ellis, Covington, for defendant.
Before FOIL, PITCHER, and PARRO, JJ.
PARRO, Judge.
Defendant, James D. Dickens, was charged by bill of information with possession of marijuana with intent to distribute, a violation of LSA-R.S. 40:966. Defendant filed a motion to suppress physical evidence and oral statements, which was denied by the trial court.[1] Defendant withdrew his initial plea of not guilty and pled guilty as charged, reserving his right to appeal the denial of the motion to suppress. See State v. Crosby, 338 So.2d 584 (La.1976). The trial court sentenced defendant to a five year term of imprisonment at hard labor, suspended fifty-seven months of the sentence and placed defendant on supervised probation for three and one-half years under general conditions. Defendant has appealed, urging in a single assignment of error that the trial court erred by denying the motion to suppress physical evidence seized as a result of an illegal warrantless search.
Testimony adduced at the suppression hearing reveals that the instant offense occurred on December 16, 1991, in St. Tammany Parish. Louisiana State Police Trooper Mike Brooks testified that, at about 11:30 p.m. on the date in question, defendant's car approached him at "an extremely high rate of speed." After his initial attempt to engage his radar was unsuccessful, Brooks clocked defendant traveling at 74 m.p.h. in a 65 m.p.h. speed zone. Brooks then paced defendant for about one-tenth of a mile at 72 m.p.h. while the tires on the right side of defendant's vehicle were weaving from the lane of traffic onto the shoulder of the highway. According to Brooks, these observations caused him to think that defendant was driving while intoxicated. On those bases, Brooks stopped defendant's car.
After Brooks effected the stop, defendant stepped out of his vehicle and positioned himself between his car and Brooks' unit. At Brooks' request, defendant produced his driver's license. Defendant's car bore a Georgia license plate. When Brooks asked defendant if the car belonged to him, defendant answered that it was a rental car. Upon learning that defendant was not the individual who had rented the vehicle, Brooks asked defendant to produce the rental agreement for the car. Defendant stated that the agreement was in the car.
Defendant started to go to the driver's side of his vehicle. Because the driver's side was close to the roadway and because Brooks did not want defendant to get hit by approaching vehicular traffic, he asked defendant to retrieve the agreement from the passenger side of the car. However, when defendant told Brooks that the passenger side was locked, defendant entered the car from the driver's side. Brooks, who took defendant's word that the passenger door was locked, went to the passenger side of the car and did not try to see if the door in fact was locked. Brooks shined his flashlight through the window on the passenger side so defendant could find the rental agreement. Brooks' testimony indicates that at some point, either when defendant reentered the car to look for the agreement or after he found the agreement, defendant opened the passenger door. According to Brooks, when defendant leaned across the driver's seat to hand him the agreement, he stuck his head inside the vehicle through the opened passenger door to get the agreement. Brooks stated that he assumed he had permission to stick his head inside the car by virtue of defendant's actions in trying to hand him the agreement. When defendant relinquished the agreement to Brooks, Brooks began checking to see if the name of the lessee of the car matched the *331 name defendant had given him; and, while Brooks was reading the name, he immediately smelled a strong odor of marijuana, both "burnt and fresh" emanating from the interior of the vehicle. In regard to his previous experience in seizing marijuana, Brooks had personally effected seizures totaling in excess of several thousand pounds of the substance.
Brooks went back to his unit and requested a check of defendant's criminal history. Defendant exited his car and stood between it and the police unit. Because he "believed" that defendant had marijuana in the vehicle, Brooks began filling out a consent to search form. Brooks explained the form to defendant. However, because defendant was initially hesitant to sign it, Brooks advised defendant that it would be best for him not to sign the form and that he would "take care of the situation as quickly as possible for [defendant]." Brooks told defendant that he suspected that defendant had marijuana in the car and that he believed it was in the trunk area of the car. According to Brooks, the smell was strong and he figured it was from a "fairly good quantity" of the drug.
Brooks called for a drug-sniffing dog. According to Officer Jack Uhle, he received the call at 11:36 p.m. and responded to it within six minutes of its receipt. Uhle and the dog were certified by the NNDDA (National Narcotics Detector Dog Association) as a narcotics team in the detection of cocaine, marijuana and methamphetamine. When Uhle walked the dog around defendant's vehicle, she dragged him to the trunk area of the car and made a very aggressive alert to the presence of drugs. Brooks then obtained the keys to defendant's vehicle, opened the trunk and found about forty pounds of "freshly cut" marijuana packaged in clear plastic packages inside a partially zipped suitcase. Brooks then placed defendant under arrest and advised him of his Miranda rights.
Defendant testified that he was traveling 64 m.p.h. prior to the stop. Defendant acknowledged that, when he reentered his car to get the rental agreement for Brooks, he got into the car from the driver's side because the passenger side was locked. According to defendant, he did not remember if Brooks asked him to enter the car on the passenger side; but he did recall Brooks telling him something about the traffic, being careful and watching out. In any event, when Brooks walked to the passenger side of the car, the passenger door was locked. Defendant further testified that Brooks was shining his flashlight into the car to see "where my hands was [sic] going." Defendant stated that he immediately unlocked the passenger door where Brooks was standing with the flashlight. Defendant elaborated that in unlocking the door he had to "pull the knob up," but he did not open the door. Also, he noted there was a "bunch of like coca cola bottles and stuff" on the passenger seat. According to defendant, Brooks "must have opened" the passenger door; and Brooks stuck his head inside the car. At that time, defendant handed Brooks the rental agreement, which he had removed from the glove compartment; and, according to defendant, he did not "believe" that he was holding the agreement up to hand it to Brooks before Brooks opened the door. Although defendant testified that he never told or asked Brooks to enter his car, he acknowledged that he never told Brooks to "[s]tay out."
In his sole assignment of error, defendant argues that there was no evidence of record that Brooks could detect the odor of marijuana prior to the time he unlawfully entered defendant's vehicle by opening the door and leaning into it to get the rental agreement. More specifically, relying on State v. Garcia, 519 So.2d 788 (La.App. 1st Cir.1987), writ denied sub nom. State v. Rodriguez, 530 So.2d 85 (La.1988) (in which we stated that there is no reasonable expectation of privacy from lawfully positioned officers who detect the odor of drugs with inquisitive nostrils), defendant argues that, by entering the vehicle without consent, Brooks was not lawfully positioned at the time he detected the odor of the marijuana. Defendant concludes that Brooks' alleged unlawful entry constituted an illegal search and, consequently, the drugs should be suppressed since they were seized without probable cause to believe that the vehicle contained contraband. We disagree.
*332 Clearly, the officer who detected the odor of marijuana in Garcia was lawfully positioned when he smelled the substance, i.e., he came to the scene of the defendant's stopped vehicle after it had been stopped by another officer and perceived an overwhelming odor of marijuana as he approached the defendant's truck. Accordingly, under those circumstances, there was no intrusion of the defendant's reasonable expectation of privacy and no search resulted from the officer smelling the marijuana. On the other hand, if an officer sticks his head into a vehicle for the purpose of seeing and/or smelling things he could not see or smell from the exterior of the vehicle, his inspection goes beyond that which may be seen or smelled by a lawfully positioned inquisitive officer and such actions constitute a search. See generally, 1 W.LaFave, Search and Seizure, § 2.5(c) (1987).
In the instant case, the trial court evidently accepted Brooks' version of the facts rather than that of defendant. This determination turned on credibility and we find no error in the trial court's finding to which we must give great weight. State v. Keller, 403 So.2d 693, 696 (La.1981); State v. Hale, 481 So.2d 1056, 1059 (La.App. 1st Cir. 1985), writ denied, 484 So.2d 668 (La.1986). According to Brooks' testimony, defendant opened the passenger door (which had been locked) and leaned across the driver's seat to hand him the rental agreement. Brooks assumed that he had permission to stick his head inside the car based on defendant's actions. Defendant's own testimony revealed that there were objects on the passenger seat which apparently constituted some obstruction between himself and the officer. Under these facts and circumstances, we find that defendant at least tacitly consented to the officer's action in leaning into the vehicle to accept the rental agreement from defendant and, thus, defendant relinquished any expectation of privacy in the vehicle's interior that otherwise would have inured to him. Consequently, the officer's entry into the interior of defendant's vehicle to obtain the agreement was not an unlawful search; and, thus, these facts and circumstances are clearly distinguishable from facts and circumstances such as those in which an officer's unlawful intrusion of the interior of a stopped vehicle constitutes an illegal search. Furthermore, in the instant case, the officer's testimony reflects that his purpose in leaning into the vehicle was to accept the document extended to him by defendant rather than to position himself inside the vehicle to see and/or smell things he could not have seen or smelled from the vehicle's exterior.
Under these facts and circumstances, there was reasonable suspicion to effectuate the traffic stop and probable cause to justify the search of the trunk of defendant's car. Therefore, this assignment lacks merit.

PATENT SENTENCING ERROR
Under the authority of LSA-C.Cr.P. art. 920(2), this Court routinely reviews appellate records for patent error. After reviewing the record, we have discovered a patent sentencing error; the trial court failed to give defendant credit for time served. See LSA-C.Cr.P. art. 880. Accordingly, we amend the sentence to reflect that defendant is to be given credit for time served prior to execution of the sentence. See State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990). Resentencing is not required; however, we remand this case and order the trial court to amend the commitment and the minute entry of the sentencing to reflect that defendant is to be given credit for time served.
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED; REMANDED WITH ORDER.
NOTES
[1] We note that, at the conclusion of the suppression hearing when the trial court issued its ruling denying the motion to suppress the physical evidence (the marijuana forming the basis of the instant prosecution), defense counsel indicated to the court that as a consequence of that ruling he was withdrawing the motion to suppress defendant's statements to the police. Consequently, the only issue presently before this Court for appellate review is the correctness of the trial court's ruling on the motion to suppress physical evidence.