# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 07-1183

STATE OF LOUISIANA

VERSUS

DEMETRICE LEWIS

**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. CR-198-05-1
HONORABLE ANNE LENNAN SIMON, DISTRICT JUDGE

**********

**ULYSSES GENE THIBODEAUX
CHIEF JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir, and Glenn B. Gremillion, Judges.

**AFFIRMED.**

**Charles Long Bull, Jr.**
**P. O. Box 400**
**Welsh, LA 70591**
**Telephone: (337) 734-2811**
**COUNSEL FOR:**
    **Defendant/Appellant - Demetrice Lewis**

**Michael Cade Cassidy**
**District Attorney - 31st Judicial District Court**
**P. O. Box 1388**
**Jennings, LA 70546**
**Telephone: (337) 824-1893**
**COUNSEL FOR:**
    **Plaintiff/Appellee - State of Louisiana**

**Norman Silverman**
**917 Franklin Street - 4th Floor**
**Houston, TX 77002**
**Telephone: (713) 526-1515**
**COUNSEL FOR:**
      **Defendant/Appellant - Demetrice Lewis**

**THIBODEAUX, Chief Judge.**

Defendant, Demetrice Lewis, was convicted of possession of a controlled dangerous substance, i.e., marijuana, with intent to distribute in violation of La.R.S. 40:966(A)(1). Prior to trial, her motion to suppress the evidence was denied. She appeals this denial. For the following reasons, we affirm.

## FACTS

On February 15, 2005, Jonathan Odom, a trooper with the Louisiana State Police, was patrolling Interstate 10 at approximately noon time, in the area of Jefferson Davis Parish, when a red Grand Prix vehicle passed him on his left, traveling approximately sixty-five miles per hour. As he continued eastward, he noticed the vehicle did not pull over into the right-hand lane but continued traveling in the left-hand lane. As he watched, approximately eight cars moved up behind the vehicle in the left-hand lane. Finally, a white car, which was directly behind the Grand Prix, pulled into the right-hand lane in order to pass. Still, the Grand Prix still did not pull over into the right-hand lane to allow the cars behind to pass. At this point, Trooper Odom pulled the Grand Prix over for impeding the flow of traffic, a violation of La.R.S. 32:71. Yolanda Jenkins was a passenger in the vehicle.

Trooper Odom asked the Defendant where she was going. She explained she was driving her friend to New Orleans to visit her sick mother. The car was a rental car and Trooper Odom noticed the rental receipt indicated the term of rental had expired. Defendant told the trooper she had called the rental agency and received an extension on the rental period. Defendant appeared to be very nervous and would not make eye contact with the trooper. The trooper approached the passenger and asked her where they were going. She said they were going to New Orleans to visit her mother who was ill. He noticed that although it was cool inside the vehicle, the

passenger was sweating profusely. The passenger explained she had a disease which caused her to sweat. As he talked to the passenger, he smelled a strong odor of marijuana coming from inside the vehicle.

A criminal check on Defendant and her passenger came back showing no criminal history. The trooper asked permission to search the vehicle. Defendant at first said he could search, but then changed her mind. During this time, Trooper Odom's back-up arrived, Trooper Steven Lee, who had a drug sniffing dog with him in his unit. After Defendant could not make up her mind whether to give Trooper Odom permission to search, he considered her indecision a refusal and had Trooper Lee run the dog, "Tank," around the car. On the first pass around the car, Tank alerted to the passenger window, and on the second pass around, the dog scratched at the trunk of the vehicle. Trooper Odom opened the trunk and looked inside a duffle bag and located three large bags of marijuana.

**Denial of Motion to Suppress**

Defendant filed a motion to suppress which alleged that the search was unlawful "because it was conducted without a warrant and without probable cause and without any lawful cause." Following testimony of the troopers involved with the initial stop and search, the trial court found that the traffic stop was valid and that the trooper, through a combination of factors, gained a reasonable suspicion of additional criminal activity, and that the search of the vehicle was a valid search based on probable cause.

In *State v. Thomas*, 02-471, p. 3 (La.App. 3 Cir. 10/30/02), 829 So.2d 1137, 1139-40, this court stated:

> When reviewing a trial court's denial of a motion to suppress, the appellate court looks at the totality of the evidence presented at the suppression hearing. *State v.*

*Bargeman*, 98-617 (La.App. 3 Cir. 10/28/98); 721 So.2d 964, *writ denied*, 99-0033 (La. 5/28/99); 743 So.2d 658. Unless the trial court's conclusions are not supported by the evidence or there exists a clear abuse of discretion, an appellate court should not overturn the trial court's ruling. *State v. Purvis*, 96-787 (La.App. 3 Cir. 12/11/96); 684 So.2d 567 (citing *State v. Burkhalter*, 428 So.2d 449 (La.1983)). In other words, the appellate court will give the trial court's determination great weight and will not set aside the trial court's ruling unless clearly mandated by a preponderance of the evidence. *State v. Lewis,* 97-1244 (La.App. 3 Cir. 3/6/98); 728 So.2d 1.

Moreover, when reviewing the trial court's decision on a motion to suppress the evidence, this court may look to the entire record, including relevant testimony given at trial. *State v. Sherman,* 04-1019 (La. 10/29/04), 886 So.2d 1116.

Defendant asserts that:

The trial court erred in denying the motion to suppress because the seizure of marijuana was the fruit of a traffic stop effected without probable cause, in violation of the Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution.

The trial court erred in denying the motion to suppress because the marijuana was discovered as a result of an illegal search of the interior of the vehicle conducted without probable cause, in violation of the Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution.

The trial court erred in denying the motion to suppress because the marijuana was discovered as a result of an illegally prolonged detention conducted without reasonable suspicion or probable cause, in violation of the Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution.

Defendant basically argues that the initial stop was not valid and that the trooper "conducted an illegal warrantless search of the passenger compartment of the vehicle when he put his head inside the vehicle and smelled the odor of marijuana." Therefore, Defendant argues that the evidence should have been suppressed and

3

Defendant should be acquitted of the offense of possession of marijuana with intent to distribute.

***Claim number 1: Valid traffic stop***

Defendant argues that the initial traffic stop was invalid. She argues that she was traveling the "normal" speed in the left-hand lane and, therefore, there was no requirement that she move into the right-hand lane so that a "speeding vehicle may pass."

Louisiana Revised Statutes 32:71(B)(1) provides:

> Upon all multilane highways any vehicle proceeding at less than the normal speed of traffic at the time and place and under the circumstances then existing, shall be driven in the right-hand lane then available for traffic except when preparing for a left turn at an intersection or into a private road or driveway, or passing or overtaking a vehicle proceeding in the same direction, if passing on the left side of it. Nothing herein contained shall be construed to authorize driving any vehicle in the left lane so as to prohibit, impede or block passage of an overtaking vehicle in such lane and in such event the vehicle in the left lane prohibiting, impeding or blocking passage of an overtaking vehicle shall expeditiously merge into the right lane of traffic.

At the motion to suppress hearing, Trooper Odom testified that he was driving approximately sixty miles per hour on Interstate 10 when Defendant passed him on his left traveling at a rate of approximately sixty-five miles per hour. Defendant admitted she had the cruise control set at sixty-five. He testified:

> [T]hey had plenty of time to get over. With no other vehicles in the front of me, she could have moved over, but she stayed in the left lane, and there was, you know at least eight (8) vehicles behind her--building up behind her, and one (1) small white car who was following behind her moved to the right lane to go around her because she was driving under the speed limit in the left lane.

4

The speed limit on Interstate 10 is seventy miles per hour. On cross-examination, the trooper was asked if it might have been possible that "she needed to get a little bit further down the road before she got into the right-hand lane in front of you?" The trooper stated that she had traveled a good half mile after she passed him with several cars driving behind her. It was not until one car pulled into the right lane to pass her that the trooper decided to pull her over.

When an officer observes what he objectively believes is a traffic offense, the decision to stop the vehicle is reasonable. *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769 (1996). Moreover, even relatively minor traffic violations offer an objective basis for lawful detention of a vehicle and the occupants. *See State v. Richards,* 97-1182 (La.App. 5 Cir. 4/15/98), 713 So.2d 514 (failure to come to a complete stop at stop sign); *State v. Dixon,* 30,495 (La.App. 2 Cir. 2/25/98), 708 So.2d 506 (traveling less than a car length behind the car ahead); and *State v. Duran*, 96-602 (La.App. 5 Cir. 3/25/97), 693 So.2d 2 (failure to signal lane change).

Defendant argues, however, that her conduct was "illegal only if 65 miles per hour was not a 'normal' speed and if proceeding at that speed impeded the 'normal and reasonable' flow of traffic, thereby creating an emergency." A speed of five miles per hour under the posted speed limit, she contends, is not unreasonable and is "normal."

Defendant's argument is attractive, but untenable. The duty imposed by La.R.S. 32:71(B) and other statutes such as La.R.S. 32:64(B)[1] that directly proscribe against the slow speed of traffic upon state highways are for the purpose of

---

[1]Louisiana Revised Statutes 32:64(B) states:

B. Except when a special hazard exists that requires lower speed for compliance with paragraph A of this section, no person shall operate or drive a motor vehicle upon the highways of this state at such a slow speed as to impede the normal and reasonable movement of traffic.

"protect[ing] against the risk that a slow-moving vehicle would block traffic or create a dangerous condition on a high speed highway." *Gray v. Poplar Grove Planting and Refining Co., Inc.*, 321 So.2d 919, 923 (La.App. 1 Cir. 1975), *writ denied*, 325 So.2d 280 (La.1976). The trooper testified that there was an eight-car build-up behind Defendant's vehicle, with one car finally moving into the right lane to pass the slower moving vehicle in front. Considering the above testimony and statutory duty imposed, the trooper observed what he objectively believed was a traffic offense, and the decision to stop the vehicle was reasonable. Where the speed limit was seventy-miles per hour, and there were several cars waiting in the passing lane for a vehicle traveling less than the speed limit to move over so that they could pass by, the slower moving vehicle was impeding the normal flow of traffic at the time and place and under the circumstances then existing.

The trial court did not err when it found that the State met its burden of showing that the traffic stop was a valid stop.

### Claims number 2 and 3: Probable cause and detention

Defendant argues that the trooper conducted an illegal search of the passenger compartment of the vehicle when he put his head inside the vehicle and smelled the odor of marijuana. Defendant argues the "detection of the odor of marijuana by Trooper Odom was the fruit of an illegal search."

It is well established jurisprudence that when the constitutionality of a warrantless search or seizure is at issue in a motion to suppress the evidence, the State bears the burden of proof. *State v. Parnell*, 07-37 (La.App. 5 Cir. 5/15/07), 960 So.2d 1091. Evidence obtained as the result of an illegal invasion may be excluded. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407 (1963). At the suppression hearing, Trooper Odom testified that after Defendant showed him the rental papers,

he noticed that the rental period for the vehicle had expired. She told him she had called the agency and received an extension on the rental. He stated that she appeared to be very nervous, shifting her feet, hands fidgeting, and that the carotid artery in her neck was pulsating heavily. She told him she was taking her friend to New Orleans to visit her sick mother.

The trooper stated he then approached the passenger sitting on the passenger side of the vehicle. He testified as follows:

> A. Okay. I went and approached and talked to the passenger on the passenger side of the vehicle. I approached. The window was up. I knocked on the window. She rolled it down. The air-conditioner was blowing. It was cool inside the vehicle, and I noticed the passenger was sweating profusely. Sweat was running down her face, and so I asked her name. She told me. I asked her where they were going. I asked her why she was sweating so bad, and she said--she explained that she had some type of disease that causes her to sweat. I--I don't know anything about that.

> Q. As you were making these observations as to the demeanor of the two (2) passengers of the vehicle, did you observe anything else with any of the other senses?

> A. Yes, sir. When I was talking to Ms. Jenkins, I could smell a strong odor of marijuana emitting from the vehicle.

> Q. And how were you able to recognize the odor as that being of marijuana?

> A. Normally, in a bulk, marijuana has--has got a distinctive odor. I've been around, you know, numerous cases with that much marijuana and know what it smells like.

The trooper testified that at this point, he made up his mind to ask for permission to search the vehicle. He ran a criminal check on each of the women, and as he waited for the response, he filled out a consent form. When he asked for consent, Defendant wafted back and forth, finally stating she wanted to discuss it with

7

her passenger.  At this time, he noted "refused" on the consent form and asked his partner to run the dog around the car.  He stated the dog alerted on the trunk of the car.

During cross-examination of Trooper Odom, the following colloquy:

Q.  Now, Officer Odom, you said when Tank--Tank is the K-9; is that correct?

A.  Correct.

Q.  And Tank's sense of smell is much more sensitive than your sense of smell?

A.  Correct.

Q.  So Tank didn't just jump right up on the passenger side of the vehicle where you said you detected the marijuana?

A.  I didn't see him, no sir.

Q.  So he walked all around the vehicle?

A.  Yes, sir.

Q.  So Tank wasn't all that sure until he got to the trunk, was he?

A.  I'm not sure.  I'm not certified.

Q.  He didn't put his paw up on anything but the trunk.

A.  He might have put it on the passenger side, but no, I saw him put it on the trunk.

Q.  You saw him put it on the --

A.  I didn't see him put it on the passenger side, no, sir.

Q.  So, in essence, you're saying your sense of smell is more acute--

A.  No, sir.

Q.  --than a trained dog?

. . . .

Q. So--

A. My head was inside the vehicle, sir. Whenever the dog went around, the window had been up and--or was down or whatever it was. But my head was inside the vehicle when I was talking to the subject, and they might have even smoked a joint in there or something, or some might have been laid on the floor--

MR. HENDERSON: Objection, Your Honor. That's not responsive.

While at the hearing, Defendant objected to the above declaration by the trooper that he could smell the marijuana because his head was in the vehicle as non-responsive, citing *State v. Dickens*, 633 So.2d 329, 332 (La.App. 1 Cir. 1993), Defendant argues:

"On the other hand, if an officer sticks his head into a vehicle for the purpose of seeing and/or smelling things he could not see or smell from the exterior of the vehicle, his inspection goes beyond that which may be seen or smelled by a lawfully positioned inquisitive officer and such actions constitute a search. See also *State v. Waters*, 780 So.2d 1053, 1057 (La. 2001)."

The record is clear that Trooper Odom's head was inside the interior of the vehicle when he smelled the odor of marijuana.

In *Dickens,* the first circuit affirmed the trial court's denial of Dickens' motion to suppress the evidence. Dickens argued that the officer could not have detected the odor of marijuana in the vehicle prior to leaning into the car to take the rental agreement papers out of Dickens' hand. Dickens argued that "by entering the vehicle without consent, [the officer] was not lawfully positioned at the time he detected the odor of the marijuana." The first circuit held:

Under these facts and circumstances, we find that defendant at least tacitly consented to the officer's action in leaning into the vehicle to accept the rental agreement from defendant and, thus, defendant relinquished any

9

expectation of privacy in the vehicle's interior that otherwise would have inured to him. Consequently, the officer's entry into the interior of defendant's vehicle to obtain the agreement was not an unlawful search; and, thus, these facts and circumstances are clearly distinguishable from facts and circumstances such as those in which an officer's unlawful intrusion of the interior of a stopped vehicle constitutes an illegal search. Furthermore, in the instant case, the officer's testimony reflects that his purpose in leaning into the vehicle was to accept the document extended to him by defendant rather than to position himself inside the vehicle to see and/or smell things he could not have seen or smelled from the vehicle's exterior.

*Id.* at 332.

The Louisiana Supreme Court has long recognized that detecting marijuana by smell does not constitute a search and, thus, there is no reasonable expectation of privacy from a lawfully positioned officer with an inquisitive nose. *State v. Coleman*, 412 So.2d 532 (La.1982); *State v. Risin*, 02-100 (La.App. 4 Cir. 1/22/02), 807 So.2d 1042.

In the present case, the facts concerning the trooper's position as to the open passenger-side window and objective are not so clearly stated or argued. As noted above, the only mention of the trooper's alleged act of putting his head in the window was made during cross-examination in response to Defendant's questioning which insinuated the odor of the marijuana was so insignificant that even the dog could not smell it from the passenger window.

Following Trooper Odom's examination, however, Steven Lee, a trooper with the Louisiana State Police and a certified drug-sniffing dog handler, testified. He stated that he had arrived as back-up while Trooper Odom was talking to the passenger. After Trooper Odom asked for and was refused consent to search the vehicle, Trooper Lee made two passes around the vehicle with his dog, Tank. He stated on the first pass, the dog jumped up onto the passenger's side door and stuck

his head into the opened window, and on the second pass, Tank scratched on the trunk of the car.

At trial, Trooper Odom testified that the passenger appeared to be very nervous. He testified:

> Q. Okay. Besides her demeanor, did you notice anything else?
>
> A. Yes. When I was speaking with her, I could smell the strong odor of raw marijuana in the vehicle area, the passenger com--or the--the--I'm trying to find the word--the occupant compart--the compartment of the vehicle where the passenger and driver sit. I'm sorry.
>
> Q. How long did it take you to notice this odor of marijuana after she--she opened the door or rolled down the window?
>
> A. I was there for a little while. I had to ask her a question or two (2), and then, like I said, I was right there at the window, and I had leaned in, you know, 'cause she was sweating real bad and I just wanted to make sure she was okay 'cause she was, you know, trembling--her hands were trembling, and I just, you know, thought she was about to pass out actually.

There was no further testimony given by the trooper regarding how far into the vehicle he put his head and for what purpose.

The passenger also testified at trial. When asked about the stop, she testified only that the trooper stated he had to search the car "because I looked like I was nervous, which I may have looked like I was nervous due to the fact that I have a sweating disorder and my hands tend to get sweaty." There were no further questions asked at trial which concerned the trooper putting his head inside the vehicle.

In *State v. Waters*, 00-356 (La. 3/12/01), 780 So.2d 1053, the supreme court found that the officer was justified in conducting a warrantless search of the vehicle when he reached into the back seat of the vehicle to retrieve a gun and then

11

smelled the odor of marijuana. Waters was pulled over for a traffic violation. His girlfriend told the officer there was a gun in her purse, which was behind the driver's seat. When the officer opened the door and accessed the back seat of the vehicle, he smelled a strong odor of marijuana. Because the officer knew Waters had convictions for violent crimes, the supreme court found that intruding into the vehicle to secure the weapon justified his intrusion and when he smelled the marijuana, he acquired probable cause to search the vehicle's interior for the contraband.

In this case, except for the trooper's statement he could smell the marijuana because, "my head was inside the car," there is no indication there was any intrusion with the intent to search out contraband. It was not unlawful for the trooper to lean down and into the open window to speak with the passenger. *See Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882 (1997) and *State v. Parfait*, 96-1814 (La.App. 1 Cir. 5/9/97), 693 So.2d 1232.

Moreover, there was no evidence of an intrusion into the vehicle such that would have violated Defendant's expectation of privacy. The record does not compel a finding that the trooper put more than his face inside the open window of the car for any purpose other than to inquire as to where Defendant and the passenger were going and as to the passenger's well-being. The trooper's statement that his head was inside the car was nothing more than an exaggerated response to the line of questioning which implied the stop was nothing more than pretext because he could not have smelled the odor of marijuana if the dog did not smell it from the passenger-side window.

Considering all the factors--that the initial stop was a valid stop, that Defendant and the passenger exhibited very nervous behaviors, that the vehicle's rental period had expired, that the trooper smelled the odor of marijuana as he was

12

speaking with the passenger who was sitting inside the vehicle, and because of his experience as a law enforcement officer he immediately recognized the smell of the marijuana--the trooper had probable cause to search the vehicle.

Finally, Defendant argues:

> [b]ut for the illegal search of the interior of the vehicle and resulting detection of the odor of marijuana, there was no justification for prolonging Appellant's detention in order to request consent to search and to deploy a drug-detecting dog. After the criminal history checks were completed, any further prolonging of the detention was illegal."

Louisiana Code of Criminal Procedure Article 215.1(D) provides in pertinent part:

> During detention of an alleged violator of any provision of the motor vehicle laws of this state, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity.

Defendant does not indicate how much time was spent after the trooper stopped her to complete the investigation and issue the citation. At the suppression hearing, the trooper testified the citation was issued at 12:45 p.m. There was no further testimony regarding duration of the stop. Although, in response to this argument, the State asserts that from the "initial stop of the vehicle to the time the K-9 alerted was approximately 31 minutes," there is nothing before this court to substantiate the duration of the stop. However, after the trooper smelled the odor of marijuana, he had reasonable suspicion there was additional criminal activity. As noted above, the drug-sniffing dog had arrived while he was speaking with the passenger. The trooper testified he had formed the belief there was contraband in the vehicle before he ran a criminal check and filled out the consent to search form. At

13

this point, the trooper had probable cause to search the vehicle and the duration of detention was not an issue.

For all of the above reasons, the trial court did not err when it denied Defendant's motion to suppress the evidence.

## <u>CONCLUSION</u>

For the foregoing reasons, we affirm the trial court's denial of Defendant's motion to request and affirm the Defendant's conviction and sentence.

**AFFIRMED.**