2008 VT 116

## State of Vermont v. David Guzman, Jr.

[965 A.2d 544]

No. 06-408

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed August 22, 2008

*William H. Sorrell*, Attorney General, and *John Treadwell*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Frank J. Twarog* of *Murdoch Hughes & Twarog, P.C.*, Burlington, for Defendant-Appellant.

¶ 1. **Burgess, J.** Defendant appeals his convictions for possession of cocaine and marijuana. On appeal, defendant claims that the trial court erred in denying his motion to suppress statements and evidence seized from his person and his vehicle because: (1) defendant's consent to search his person was not given voluntarily; (2) defendant's *Miranda* rights were violated; and (3) police seized defendant's automobile for an unreasonable period of time. Defendant also appeals the court's denial of his motion for reconsideration. We conclude that the search of defendant's person was constitutional as incident to arrest, and affirm.

¶ 2. Just after 1 a.m. on Saturday morning, February 25, 2006, Police Officer Kevin Emilio observed defendant's car driving in excess of the posted speed limit in Middlebury. Officer Emilio activated his blue lights, and defendant pulled to the side of the road. The officer approached defendant's vehicle, and the operator identified himself as defendant. Officer Emilio testified that, based on his training and experience, he detected the distinct odor of

marijuana coming from defendant's vehicle. Because of this smell, the officer called for a canine unit to come and check defendant's car for illegal drugs. In answer to Officer Emilio's questions about his destination, defendant claimed that he was on his way to "Schenectedon" to visit his aunt. Upon further inquiry, defendant agreed he was going to Schenectady, New York. Another officer arrived while Officer Emilio was questioning defendant. According to Officer Emilio's testimony, defendant was very nervous during their conversation, and was sweating, fidgeting, and moving his hands around the vehicle. Officer Emilio testified that defendant's movements caused him to be concerned that defendant might have a weapon, and he asked defendant to exit the car for a pat down. Defendant agreed and exited the car.

¶ 3. At this time, the canine unit arrived to check the car for drugs. While the dog was walking around the car, Officer Emilio and his colleague checked defendant for weapons. The officers discovered no weapons during the pat down, but noticed that defendant had a lot in his pockets and that the odor of marijuana was stronger and coming from defendant's person. Officer Emilio handcuffed defendant. Officer Emilio testified that he did this because he smelled marijuana on defendant's person and defendant was very nervous. Officer Emilio then asked defendant if they could search his pockets. According to defendant's testimony, he answered, "I guess." The officers found two cell phones, a packet of fresh marijuana, cocaine, digital scales, tabs of paper with a dropper, some unknown liquid, and $2300 in cash. Meanwhile the dog had "alerted" on defendant's car. Defendant was arrested, placed in the back of the police cruiser, and taken to the police department for processing.

¶ 4. Because defendant refused to provide consent to search his vehicle, police seized and impounded defendant's car. On Monday morning, the first business day following the impoundment, police applied for a warrant to search defendant's car. The court granted the warrant application, and Officer Emilio executed the warrant the same afternoon.

¶ 5. Defendant was charged with possession of cocaine and marijuana. Defendant filed a motion to suppress statements he made to police and evidence seized from his person and his

automobile.[1] Defendant contended that the search of his person violated Article 11 of the Vermont Constitution because his agreement to the search was not voluntary and was merely a submission to the officer's authority. Defendant also argued that he was placed in custody when Officer Emilio handcuffed him, and that police violated his rights under the Federal and Vermont Constitutions because they did not advise him of his *Miranda* rights. Finally, defendant argued that the search of his automobile violated Article 11 of the Vermont Constitution because police held the vehicle for an unreasonable period of time before applying for a warrant to search it. Defendant did not challenge the validity of the initial traffic stop, the exit from his car, or the pat down. At the hearing, Officer Emilio and the canine unit officer testified. Defendant testified on his own behalf. In addition, the court viewed a videotape of the entire traffic stop.

¶ 6. The trial court issued a written order denying defendant's motion to suppress. Among other things, the trial court's findings recounted that defendant gave consent after the pat down and before police handcuffed him. Based on its findings, the court found that defendant's consent to search his pockets was voluntary. The court found there was "nothing in the evidence, neither the testimony nor the videotape, suggesting coercive or improper behavior by the officers." As to the search of defendant's vehicle, the court concluded that the warrant for the car was supported by probable cause and valid.

¶ 7. Defendant filed a motion for reconsideration, arguing that the court's factual findings were erroneous. Defendant correctly pointed out that he was handcuffed *before* police searched his pockets, not after, as found in the court's original order. Defendant also argued that the court failed to respond to his argument that the items recovered from the search of his automobile should be suppressed because police waited an unreasonable amount of time before applying for a warrant.

¶ 8. The court issued a second order correcting its factual findings, but affirming its legal conclusions. The court acknowledged that defendant was handcuffed before police searched his pockets, but found that this factual correction did not change its

---

[1] Although the court made no finding in this regard, according to Officer Emilio's affidavit, he recovered additional marijuana, among other things, from defendant's car.

decision that defendant's consent was voluntary. The court found that officer-safety concerns provided an objectively reasonable basis to handcuff defendant. The court further explained:

> The overall tenor of defendant's encounter with the Middlebury Police here shows it to have been quick, non-confrontational, cooperative, and revealing nothing which could be considered coercive. There is no reason to either doubt that consent was given or to question its voluntariness. For whatever reason, we do remember that when defendant wished to deny consent — for the auto search — he knew how to do it and felt free to follow his will.

Regarding defendant's automobile, the court concluded that there was no violation of defendant's rights because it was not unreasonable for the police to wait until Monday, the first business day after the car was seized, to apply for a warrant.

¶ 9. Defendant entered a conditional guilty plea to both charges, reserving his right to appeal the court's denial of his motion to suppress. Defendant appeals the trial court's denial of his motion to suppress, reiterating the arguments he made in the trial court.[2]

## I.

¶ 10. On appeal, defendant first argues that the district court erred in denying his motion to suppress evidence seized from his person because, under the totality of the circumstances, he did not voluntarily consent to the search of his pockets. Thus, defendant contends that the search violated his rights under Article 11 of the Vermont Constitution. See *State v. Sprague*, 2003 VT 20, ¶ 26, 175 Vt. 123, 824 A.2d 539 ("The critical inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." (quotation omitted)). The State contends that the trial court properly concluded that defendant's consent was voluntary. Alternatively, the State argues that even if defendant did not voluntarily consent, the search was constitutional as incident to an arrest supported by probable cause. Because we conclude that the search was permissible as

---

[2] Defendant submitted separate arguments addressing the trial court's denials of his initial motion to suppress and his subsequent motion for reconsideration. On review, however, we consider the trial court's orders as a whole.

incident to arrest, we do not reach defendant's argument that he did not voluntarily consent to the search.[3]

¶ 11. Police may permissibly search a suspect when the search is incident to an arrest supported by probable cause. See *State v. Greenslit*, 151 Vt. 225, 228, 559 A.2d 672, 674 (1989) (explaining that search incident to arrest is justified, in part, "to prevent the destruction or concealment of evidence"). "[P]robable cause for arrest exists where the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a person of reasonable caution to believe that a crime is being committed . . . ." *Id.*; see V.R.Cr.P. 3(a) (authorizing law enforcement to arrest without a warrant when there is "probable cause to believe [a person] has committed or is committing a felony"). The court must consider the totality of the circumstances to determine whether probable cause exists. See *State v. Towne*, 158 Vt. 607, 615, 615 A.2d 484, 489 (1992) (holding that in evaluating probable cause for a search warrant, the court should consider the totality of the circumstances). "The concept of probable cause is a practical, nontechnical one that we evaluate in a common sense manner." *State v. Blais*, 163 Vt. 642, 643, 665 A.2d 569, 570 (1995) (mem.) (quotation omitted).

¶ 12. According to the State, there was probable cause to believe that defendant was in possession of regulated drugs based on the following evidence: a trained law enforcement officer smelled marijuana on defendant's person, defendant was unusually nervous, and defendant was unsure of his destination.[4] In *State v.*

---

[3] Although the trial court denied defendant's motion to suppress on the grounds that defendant consented to the search we can affirm on different grounds if the record supports it. See *State v. Griffin*, 152 Vt. 309, 313, 565 A.2d 1340, 1342 (1989) (explaining that this Court will not reverse if the trial court reached the correct result for the wrong reason). The court's findings are consistent with our holding. The trial court explained that Officer Emilio handcuffed defendant because "the officer smelled marijuana, and therefore had reasonable basis for believing a crime had been committed and that further evidence of it was probably at hand."

[4] Although the State also claims that the canine alert on defendant's car provided an additional basis to support a finding of probable cause, we do not consider this evidence because the record does not indicate that the alert happened before police searched defendant. See *State v. Phillips*, 140 Vt. 210, 216, 436 A.2d 746, 750 (1981) (evidence obtained after detention cannot be considered in evaluating whether probable cause existed at time of detention). In its corrected order, the trial court did not specifically find whether the alert happened before or after defendant was handcuffed and searched. Furthermore, the evidence presented at the suppression

*Greenslit*, we considered a similar factual scenario. In that case, the investigating officer approached a parked car, observed smoke coming from within the vehicle, and smelled burning marijuana. The officer ordered all of the occupants out of the car, advised them of their *Miranda* rights, and ordered them to turn over any drugs. The defendant, one of the passengers, produced a small amount of marijuana from his pocket. The defendant was charged with possession of marijuana and filed a motion to suppress the evidence seized from his pocket, claiming that the smell of burning marijuana and the sight of smoke were insufficient to provide probable cause to arrest. We concluded that the smell of burning marijuana and contemporaneous presence of smoke made it reasonable "for the officer to infer that the smell and smoke were related and together more likely than not indicated a criminal transaction." 151 Vt. at 228, 559 A.2d at 674. Thus, we held that there was probable cause and that the search was constitutional as incident to arrest. *Id.*

¶ 13. The facts of this case are slightly different, in that the arresting officer did not observe smoke when he detected the odor of marijuana. We must therefore consider whether the facts of this case support a finding of probable cause. Other courts have considered the question of when the odor of marijuana is sufficient to support probable cause, and most agree that "the odor of marijuana is sufficiently distinctive that it alone can supply probable cause to believe that marijuana is nearby." *Commonwealth v. Garden*, 883 N.E.2d 905, 910 (Mass. 2008). Thus, the majority of courts conclude that the distinctive odor of a controlled substance can provide probable cause to search a particular area. *Id.* at 911 n.7 (citing cases). But see *State v. Schoendaller*, 578 P.2d 730, 734 (Mont. 1978) (holding that the odor of marijuana was not enough to justify a search of defendant's car). Similarly, the odor of marijuana may form the basis for probable cause to arrest without a warrant. See *Blake v. State*, 772 So. 2d 1200, 1205 (Ala. Crim. App. 2000); see also 2 W. LaFave, Search and Seizure § 3.6(b), at 311-12 (4th ed. 2004) (explaining that odor of marijuana can form probable cause to

---

hearing does not conclusively establish that Officer Emilio knew of the alert before he handcuffed and searched defendant. Officer Emilio testified that he put the handcuffs on defendant before the dog had completed its walk around the car. In addition, the video of the stop reflects that the officers searched defendant before the alert.

arrest "when the odor [is] detected coming from a particular person") (citing cases).

¶ 14. Several courts caution, however, that the odor of marijuana will not always produce probable cause to search or to arrest. It is within the context of the entire factual situation that the grounds for probable cause must be examined. As the Fourth Circuit Court of Appeals explained:

> While the odor of marijuana provides probable cause to believe that marijuana is present, the presence of marijuana does not of itself authorize the police either to search any place or to arrest any person in the vicinity. Additional factors must be present to localize the presence of marijuana such that its placement will justify either the search or the arrest.

*United States v. Humphries*, 372 F.3d 653, 659 (4th Cir. 2004). We agree that the odor of marijuana, detected by a trained and experienced police officer, can provide a reasonable basis to believe that marijuana is present. We also agree that the odor alone may not always be sufficient to arrest an individual. The facts of this case, however, fall well within the reasonable standard enunciated by the Wisconsin Supreme Court:

> the odor of a controlled substance may provide probable cause to arrest when the odor is unmistakable and may be linked to a specific person or persons because of the particular circumstances in which it is discovered or because other evidence at the scene or elsewhere links the odor to the person or persons.

*State v. Secrist*, 589 N.W.2d 387, 394 (Wis. 1999).

¶ 15. Here, we conclude that there was probable cause to arrest given the odor of marijuana from the car, followed by the stronger odor of marijuana that Officer Emilio detected coming from defendant's person — the only individual present, combined with the officer's other observations of defendant's suspicious conduct. Officer Emilio's training and experience to accurately detect the smell of marijuana was unchallenged. See *id.* at 395 (holding that when a trained and experienced police officer identifies the unmistakable odor of a controlled substance and can link it to a specific person, there is probable cause to arrest).

Furthermore, the officer had other evidence linking defendant to the marijuana odor. Officer Emilio first smelled the marijuana coming from defendant's car, of which defendant was the sole occupant. Officer Emilio then noted an even stronger smell of marijuana emanating directly from defendant's person during the pat down. See *Humphries*, 372 F.3d at 659 ("[I]f an officer smells the odor of marijuana in circumstances where the officer can localize its source to a person, the officer has probable cause to believe that the person has committed or is committing the crime of possession of marijuana."). Officer Emilio also observed additional behavior supporting a finding of probable cause, including that defendant was very nervous, sweating on a winter's night, and fidgeting in his car. See *State v. Betz*, 815 So. 2d 627, 633 (Fla. 2002) (holding that officer had probable cause to search passenger compartment of vehicle where officer smelled marijuana and suspect was extremely nervous and behaved in a suspicious manner); *State v. Lewis*, 07-1183, pp. 13-14 (La. App. 3 Cir. 4/2/08); 980 So. 2d 251, 260 (concluding that officer had probable cause to search the suspect's vehicle based on smell of marijuana, nervous behavior, and outdated rental agreement). Thus, the totality of the circumstances provided a sufficient basis for "a person of reasonable caution to believe that a crime [was] being committed." *Greenslit*, 151 Vt. at 228, 559 A.2d at 674.

¶ 16. Because police had probable cause to arrest defendant, the search of defendant's person was permissible as incident to that arrest. It is of no significance that police did not formally arrest defendant before conducting the search of his person. Probable cause depends on whether there are objective facts to support such a finding, not whether the officers subjectively believed there was probable cause. See *State v. Badger*, 141 Vt. 430, 446, 450 A.2d 336, 345-46 (1982). Moreover, "it is the existence of probable cause for the arrest which brings the search within constitutional limits, not merely the act of taking an individual into custody." *Greenslit*, 151 Vt. at 228, 559 A.2d at 674; see *Blake*, 772 So. 2d at 1207 ("A warrantless search preceding arrest is reasonable under the Fourth Amendment, so long as probable cause to arrest existed before the search and the arrest and search are substantially contemporaneous."). Here, probable cause to arrest existed before the search and the formal arrest came shortly thereafter.

## II.

¶ 17. Next, we consider defendant's claim that his *Miranda* rights were violated. Before conducting any custodial interrogation, police are required to advise suspects of their rights to remain silent and to have an attorney present during questioning. *State v. Beer*, 2004 VT 99, ¶ 25, 177 Vt. 245, 864 A.2d 643; see *Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966). Defendant argues that when police handcuffed him, he was in custody and therefore he should have been given his *Miranda* warnings. See *Beer*, 2004 VT 99, ¶ 25 (explaining that a suspect is in custody when, under the totality of the circumstances, a reasonable person would believe he or she was not free to leave or to refuse to answer police questions). Defendant received no such warning, and therefore claims that any statements he made subsequent to being handcuffed should be suppressed.

¶ 18. The only statement that defendant alleges was illegally obtained was his consent to search his person. Even if defendant was in custody at the time he provided consent, requests for consent to search before *Miranda* warnings are given are permissible because such a request is not an interrogation. *State v. Crannell*, 170 Vt. 387, 393, 750 A.2d 1002, 1009 (2000), *overruled on other grounds by State v. Brillon*, 2008 VT 35, 183 Vt. 475, 955 A.2d 1108. In any event, because we conclude that the search was permissible as incident to a lawful arrest, we are not required to determine whether defendant voluntarily consented to the search.

## III.

¶ 19. Finally, we consider the evidence seized from defendant's automobile. Police seized defendant's car after they arrested him early on Saturday morning. Police held defendant's vehicle until Monday morning when the State applied for and received a warrant to search the car. Police searched defendant's car that afternoon and reportedly found marijuana inside.

¶ 20. In *State v. Platt*, we held that "Article 11 permits the warrantless seizure of an unoccupied vehicle for a reasonable amount of time before a warrant can be obtained where there is probable cause that the car contains evidence of a crime." 154 Vt. 179, 189, 574 A.2d 789, 795 (1990). Defendant does not challenge

whether there was probable cause to support the initial seizure of his car. Instead, defendant contends that the State held his car for an unreasonably long period of time before applying for a warrant and thus the evidence seized from the car should be suppressed.

¶ 21. We conclude that it was not unreasonable for police to wait until Monday morning to apply for a warrant. Assuming police could have contacted a judge over the weekend, no circumstances compelled them to do so in this case. Defendant alleges no prejudice nor even inconvenience that would render the delay over the weekend unreasonable.[5] Furthermore, there is no requirement that police obtain search warrants for vehicles immediately; such warrants must be obtained in a "reasonable amount of time." *Id.* As the trial court emphasized, the Rules of Criminal Procedure require that detained persons be brought before a judicial officer without delay, but do not contain a similar provision for automobiles. See, e.g., V.R.Cr.P. 3(g) (requiring that a person arrested without a warrant and not released "be brought before the nearest available judicial officer without unnecessary delay"). The decision to wait until Monday morning, the first business day after the seizure, was not unreasonable under the facts of this case.

*Affirmed.*

---

[5] Defendant remained in custody for failure to post bail throughout the weekend and until two days after execution of the warrant.